## RYAN & Co. v. BOYD.

NO<small>TICE</small>: *Judgments without, enjoined.*

Courts of equity have jurisdiction to enjoin the execution of a judgment ren-
dered without notice to the defendant, actual or constructive.   The statute
(Sec. 2619, *et seq., Gantt's Digest*), is but a cumulative remedy.

INJUNCTION : *Pleading.*

The defendant in a judgment rendered against him without notice, need not
show in his bill for injunction that he had a good defense to the action in
which i. was rendered.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*Duffie & Hill*, for appellant.

*Watkins, contra.*

C. B. MOORE, *Special Judge.*

This is a suit brought to the September term of the Pulaski
Chancery Court by F. H. Boyd against A. H. Ryan & Co.,
and H. H. Rottaken, sheriff of Pulaski county.

Boyd, in his bill of complaint, alleges that on the 26th of

September, 1873, A. H. Ryan & Co., obtained a judgment against one B. R. Murphy and himself for the sum of $182.70, with ten per cent interest from the 15th of March, 1873, before one E. H. Chamberlain, an acting justice of the peace of Big Rock township, Pulaski county, but who was neither elected nor appointed to the office, nor commissioned—or if commissioned, that his term of office had expired long before the date of the rendition of the judgment. That on the 8th of August, 1877, an execution was issued on the judgment by J. R. Howe, Esq., an acting and duly commissioned justice of the peace, which was returned "*nulla bona*," and that on the 29th of August, a transcript of the judgment was filed in the office of the clerk of the Circuit Court of Pulaski county, and an execution issued therefrom, which was levied by Rottaken, the sheriff, on certain real estate of Boyd's, and which was advertised and about to be sold.

The summons in the suit before Chamberlain was duly returned by the constable, and on its face showed personal service on both Boyd and Murphy. The bill denies the correctness of the return; that "it is untrue and utterly false so far as service on defendant, Boyd, is concerned;" denies that he was ever in any manner summoned, and claims that the judgment is illegal and void; prays that the sale of his property be enjoined, and for other proper relief.

Affidavits, which do not appear in the transcript, were exhibited, and a temporary injunction was granted.

At the March term, 1878, Ryan & Co., demurred to the bill, assigning eight causes of demurrer, as follows:

1. That the bill does not state sufficient facts.

2. That it does not show that plaintiff has no relief at law.

3. That it does not show sufficient diligence on the part of complainant in respect of the debt.

4. That it does not offer to pay what is admitted to be due.

5. That it does not show that there was any fraud practiced by A. H. Ryan & Co., or any of them, in obtaining the judgment complained of.

6. That it does not show that complainant had any defense on the merits.

7. That it does not show that the judgment is wrongful or for an improper amount.

8. That not denying the debt to be due, it does not show that any part of it has been paid.

The case was submitted on the demurrer and the same overruled by the Chancellor, and defendants declining to answer, the injunction was made perpetual, and Ryan & Co. excepted and appealed.

The real and only important questions presented by the bill and raised by the demurrer, necessary to be determined here, are those contained in the two first grounds alleged.

We pass over the allegations in the bill which charge that Chamberlain, the justice who rendered the judgment, was not elected, appointed or commissioned. These allegations are not sufficient as they stand in the bill to render the judgment void on demurrer. The complainant admits, in the first part of his bill, and by the qualifying sentence, that if ever commissioned his term of office had expired, that he was a *de facto* officer, exercising the functions of a justice of the peace, at least under color of authority and law.

We are led, then, *first*, to the important inquiry, whether a judgment rendered against a party without any notice or service of summons, either actual or constructive, should be allowed to bind him, and become a lien on his property, and may execution issue thereon and his property be sold to satisfy such a judgment? and, *secondly*, has a court of equity the right to interpose, by injunction, to restrain the enforcement of such a judgment and execution?

We are well aware of the great danger and mischief there would be in allowing a person against whom a judgment has been obtained, to dispute the truth of the return of the officer of service of the summons, and to have a judgment set aside or execution thereon enjoined or quashed, without the strictest proof ; and we recognize the wise policy of the law making the return of the officer *prima facie* true and conclusive.

It will be borne in mind that, in this case, the question is raised by demurrer, which admits the allegations of the bill to be true, and for all present purposes they must be considered as proved.

The bare statement of the first of the above questions would seem to imply its answer, and we should hardly stop to give any reason for an answer in the negative, but for the fact that much stress is laid upon this point by counsel for the appellants, and because we find there is apparently some conflict in the decisions of the courts of other States, at least when the aid of equity is invoked.

The Constitution of the State provides (Art. 2, Sec. 21), "that no person shall be deprived of his life, liberty, or property, except by the judgment of his peers, or the law of the land." And the Legislature has very explicitly defined the manner in which suits shall be brought and process served, and when it is proved or admitted, as in this case, that no notice or summons was ever, in anywise, served on the defendant, can he be deprived of his property without a hearing? without "a day in court?" or have a cloud to overshadow his title without the fact being brought to his attention? He may justly owe the debt, and yet there may be a thousand good reasons why the creditor is not entitled to a judgment on it; and without an opportunity to present these reasons to the court, shall he be deprived of his plain constitutional right? or

as the Chancellor, in the lower court, in righteous indignation exclaims, "Is this the law of the land?"

We think not, and so hold.

As to the second question presented; Has a court of equity a right to interfere and grant an injunction against such a judgment? or, in other words, is the remedy of the appellee complete or exclusively at law?

The general principle that courts of chancery have jurisdiction over, and power to relieve against, void and fraudulent judgments, and to enjoin the execution of such judgments, is recognized in all elementary works in equity jurisprudence, and is too familiar to the profession to require citations, or indeed more than an announcement of the doctrine.

The cases in which it has been doubted or denied are where some other complications exist, or where, either in fact or it is supposed, that adequate relief is afforded by the exclusive jurisdiction conferred by statutory enactment on the courts of law out of which the executions, on void and fraudulent judgments, have issued, or where it has been held that the plaintiff having a meritorious defense to the action, and having been duly summoned, failed or neglected to plead or offer the same in the original suit.

We are cited to Sec. 2619 of *Gantt's Digest*, which provides in substance that if any person against whom any execution may have been issued, shall apply to the judge of the court out of which the execution or order of sale may have been issued, by petition verified by affidavit, setting forth cause why such execution ought to be stayed, set aside or quashed, reasonable notice of such intended application being previously given to the adverse party, his agent or attorney of record, such judge shall thereupon hear the complaint, and if it shall appear that such execution ought to be stayed, set aside or quashed, and the petitioner shall enter into a recognizance to

be approved by the judge, conditioned for the payment of the debt or surrender of property, then the judge shall make an order for stay of execution. Sections 2620 and 2621 provide for the return of the execution, and for the hearing and determining of the petition, and the perpetual stay or quashal of the execution, or for the enforcement of the execution.

There is little doubt but if the judgment in this case had been originally rendered in the Circuit Court, appellee might have effectually resorted to this statutory provision, and had the execution stayed and finally quashed by the law court. But the judgment, it is shown, was rendered in a magistrate's court, and the execution under the provisions of the statute issued out of the Circuit Court on the filing of the copy of the judgment of the justice, and his certificate that an execution had been issued by him and returned *nulla bona.* Had the appellee undertaken to rely on the provisions of section 2619, etc., the Circuit Court could have looked alone to the record presented to it, which could only have been the certified copy of the judgment, etc., and as this on its face showed a valid service and a valid judgment, it is evident that the Circuit Court would have summarily dismissed the petition at the hearing.

In the case of *Anthony & Brodie* v. *Shannon,* 8 Ark., 52, referred to and relied on by appellants, an execution had been issued by a justice of the peace on a forthcoming stay-bond, executed by one Lewis, with Shannon as surety. Property of Lewis was levied on, and at the sale, failing to bring 2-3 of its appraisement under the act of 1840, it was re-delivered by the constable to Lewis on his giving a delivery bond with other security. After this latter bond was forfeited, the constable levied on the property of Shannon, surety on the first bond. He filed a bill for injunction, claiming that the consta-

ble should have proceeded against Lewis on the security in the delivery bond.

This court, on appeal, said: "If the judgment was satisfied on the execution improperly issued, Shannon had a right to apply to the justice who issued it, to set it aside, the justice possessing power to set the same aside," and added, "In that case his remedy was complete at law, and he had no right to apply to equity for relief."

Here Shannon was cognizant of all the proceedings; he had his "law day," and all the proceedings were before the justice of the peace.

And in *Bently's, executor,* v. *Dillard,* 6 Ark., 79, Dillard filed a bill in chancery to enjoin a judgment obtained against him in a suit by the executor. The gravamen of the charge was, that the note on which judgment was obtained had been paid to the testator in his life-time. Though regularly served with process, Dillard made no defense to the suit at law, nor did he in his bill render any excuse why defense was not made. The injunction having been granted by the lower court, on appeal, this court quoted as the rule the doctrine laid down in *Andrews* v. *Fenter,* 1 Ark., 186, that, "to authorize a party to be relieved against a judgment at law, it must appear conclusively that the judgment was obtained by fraud, accident, or mistake, unmixed with any negligence on his part. The defendant cannot come into a court of Chancery for new trial or relief when there is no special ground of surprise or ignorance of important facts suggested; or where no equitable circumstances have arisen since the trial, and where he has neglected to defend himself with due diligence in the proper place," and then adds: "This rule, however, is confined to cases of the same character as the one before the court where the defense is purely legal, and is of exclusive common law jurisdiction. But if a court of law and a court of equity have

concurrent jurisdiction over the subject matter, the party may make his election as to the tribunal which shall determine the controversy.

This whole subject was very fully examined, and the authorities reviewed in the case of *Hempstead & Conway* v. *Watkins, administrator*, 6 Ark., 317.

Hempstead and Conway were the sureties of one McDonald, on a note executed to Mrs. Byrd, Watkins' intestate. Being desirous of coercing McDonald to pay the debt, and releasing themselves from liability, as sureties, they gave notice to Watkins, in writing, to sue within thirty days. Watkins sued within thirty days—but brought suit in his *individual* capacity. In this suit he failed, and then, nearly a year afterwards, he brought a suit in his representative capacity. The sureties made no defense to the last suit, and judgment was rendered against them. Execution was issued and levy made on their property. They filed a bill to enjoin the same on the ground that having given notice, under the statute, to the administrator, and he having failed to sue, properly, within the time limited—the judgment in the second suit was erroneous as against them. A temporary injunction was granted and dissolved by the Circuit Judge, as Chancellor, on the ground that the complainants might have interposed their defense at law, "and had been guilty of laches and neglect."

This court held on appeal, reversing the decree, that the defense, confered by our statute, allowing a surety to give notice to sue, etc., and if not done that he is relieved of liability, was only cumulative or concurrent with existing Chancery jurisdiction in such cases.

The case of *Bentley's executor* v. *Dillard et al.*, are carefully reviewed, and harmonized, and the conclusion summed up in these words: "Upon a careful review of the authorities the court is confirmed in the correctness of the rule laid down in

*Bentley's ex'r* v. *Dillavd*, that where the jurisdiction of courts of Chancery and courts of common law is concurrent, in consequence of courts of law having enlarged their jurisdiction by their own acts, or of its having been enlarged by act of the Legislature, without prohibitory words, the party may make his election as to the tribunal to which he will make his defense, and once having made that election, he is bound by the decision, whatever it may be, and that his right to submit the matter to a court of Chancery, is in no degree impaired by the power of courts of law, at this time, to take cognizance of the subject."

The proceedings authorized by the 2,619th section of *Gantt's Digest*, are, in their nature, and almost in express terms, such as are prescribed for a bill in Chancery to obtain an injunction.

The Legislature, by act of February 30th, 1838, (see *Gould's Digest, Chap.* 60,) made provision for foreclosing mortgages by petition in the Circuit Court.

In construing this statute, this court said, in *McLain & Badgett* v. *Smith*, 4 Ark., 244. "The case, in our opinion, is unquestionably within the jurisdiction of a court of equity ; and although under the existing organization of our judicial tribunals, the Circuit Court has jurisdiction over it, its powers in this respect, are derived from the provision in the Constitution, investing it with jurisdiction in matters of equity.

No one ever supposed that this form of proceeding precluded the ordinary bill in Chancery to foreclose a mortgage—but it was always considered as a cumulative and concurrent remedy or proceeding therewith—and the same may be said of the provisions of Sec. 2619.

All the other grounds of demurrer alleged, are comparatively unimportant, except it may be the sixth, which is that the bill does not show that the plaintiff (appellee) had a meritorious defense to the original suit. This ground is strenuously urged

in the argument of appellee's counsel. We find a conflict in the decisions of the courts of some of the other States on this point; but we have found none more satisfactory or that declares the true doctrine more clearly, or places it on firmer ground than does the Supreme Court of Tennessee, in the case of *Ridgeway* v. *The Bank of Tennessee*, 11 Humphries, 523, and which has been approved in the more recent case of *Bell* v. *Williams*, 1 Head, 227.

The bill in that case was like this, a bill to enjoin execution of a judgment without notice on a false return. The court held there was no remedy at law. That the judgment was void for matter extrinsic, and remedy only in Chancery. The language of the court is—"Nor is it material in such cases to enquire whether the defendant (in the original suit) could have made any valid defense. The injury of which he justly complains is, that a judgment was rendered against him, without notice, and without defense; we cannot doubt but that in the view of a court of equity it is unjust and unconscientious to to attempt to enforce a judgment so obtained."

Wherefore, we conclude that the statutory provision in *Sec.* 2619, *et seq.*, *Gantt's Digest*, was but a cumulative remedy, and at most, only conferred on courts of common law jurisdiction concurrent with Chancery, in the matter of staying or enjoining executions on fraudulent and void jugments, and in particular cases, as in the one at bar, that the remedy is alone in a court of equity.

The demurrer was correctly overruled, and the decree of the Pulaski Chancery Court is in all things affirmed.

Hon. J. R. EAKIN, J., did not sit in this case.