[No. 1406.]
DuBois v. Clark.

| | |
|---|---|
| 12 | 220 |
| 15 | 76 |
| 12 | 220 |
| 16 | 6 |
| 16 | 369 |
| e16 | 370 |
| 16 | 371 |
| 12 | 220 |
| 32s | 461 |
| 12 | 220 |
| d19 | 134 |
| 12 | 220 |
| 20 | 129 |
| 12 | 220 |
| 35S | 61 |
| 37S | 38 |

1. SUMMONS—RETURN OF SERVICE NOT CONCLUSIVE.

An officer's return of service of summons is not conclusive. Any return, no matter what its recitals of service, may be attacked and shown to be false in a proper proceeding.

2. ATTORNEYS—UNAUTHORIZED APPEARANCE—JUDGMENTS.

The unauthorized appearance of attorneys for a defendant in an action does not give the court jurisdiction, and a judgment rendered against a defendant without service of summons and upon appearance entered without his authority or knowledge is a nullity.

3. PRACTICE—MOTION TO SET ASIDE JUDGMENT.

Where a judgment is rendered against a party upon a false return of service of summons, or by an unauthorized appearance of an attorney, the judgment may be set aside upon motion in the same proceeding as well as by an action in equity. The provision of the code requiring motions to be made within six months to be relieved from judgments rendered through mistake, inadvertence, surprise or excusable neglect, does not apply to a judgment rendered on a false return of service of summons or unauthorized appearance of an attorney, but a motion in such case may be made at any time.

4. LACHES.

Mere delay in bringing an action does not constitute laches, but some other element must combine with the delay. If during the unnec-

essary delay interests of third parties have attached, or the opposing party has been induced to change his position, on the faith of the apparent situation—which he had no reason to doubt—so that to disturb the existing conditions would cause him injury, the delay is chargeable as laches. But eight months' delay in moving to set aside a judgment obtained upon a false return of service is not chargeable as laches where the judgment creditor still owns the judgment.

5. JUDGMENTS—MOTION TO VACATE.

On a motion to vacate a judgment on the ground that no service of summons was had upon defendant, and that the appearance of counsel for defendant was unauthorized, the nature and merits of the defense will not be considered. To warrant the vacation of the judgment it is only necessary for the court to find that the summons was not in fact served, and that the appearance in defendant's behalf was without authority.

*Error to the District Court of Arapahoe County.*

Mr. STUART D. WALLING, for plaintiff in error.

Mr. ENOS MILES and Mr. WESTBROOK S. DECKER, for defendant in error.

THOMSON, P. J.

On the 16th day of April, 1886, H. A. W. Tabor commenced his action in the district court of Arapahoe county for equitable relief against Rufus Clark and others, in which a writ of injunction was issued requiring them to refrain from the doing of certain acts. To procure the issuance of the writ, Tabor executed an undertaking, with J. J. B. DuBois as surety, conditioned for the payment to the defendants of all such costs and damages as should be awarded against the complainant, in case the injunction should be modified or dissolved, in whole or in part. In that suit judgment went against Tabor on the merits, and the injunction was dissolved. On the 1st day of December, 1886, Clark commenced his action in the same court against Tabor and DuBois, upon their undertaking Summons was issued in the suit, upon which the following return appears:

"State of Colorado, }
"Arapahoe County, }  *ss:*

"I do hereby certify that I have duly executed the within summons on this 3d day of December, A. D. 1886, by personally delivering a copy of this writ, and also a copy of the complaint in this action, to each of the defendants, H. A. W. Tabor and J. J. B. DuBois, at Denver, county and state aforesaid.

"Frederick Cramer, Sheriff,<br>"By J. M. Chivington, Under Sheriff."

Within the legal period, a demurrer was interposed to the complaint, which was signed Horace A. W. Tabor, J. J. B. DuBois, by A. B. Seaman, their attorney. Afterwards an answer was filed which was subscribed in the same manner. The plaintiff replied. The trial resulted in a judgment for the plaintiff, from which an appeal was taken to the supreme court, where it was reversed, and the cause remanded for a new trial. *Tabor v. Clark*, 15 Colo. 434. On the 13th day of December, 1895, the cause was retried in the district court, where judgment was again rendered against the defendants. The record recites the appearance at the trial, of the plaintiff, by O'Donnell, Decker and Smith, his attorneys, and of the defendants, by J. P. Brockway. their attorney. On the 6th day of August, 1896, DuBois moved the court to vacate the judgment, as against him, and to recall the execution which had been issued, and stay further proceedings upon the judgment, on the grounds that no summons or other process was served upon him in the action; that he had no knowledge or notice of the pendency of the action, or opportunity to defend himself against it, and that he never appeared, or authorized any attorney or other person to appear in his behalf, in the suit. The motion was supported by his own affidavit, and the affidavits of Mr. Tabor and the several attorneys who had purported to appear for him. He stated in his affidavit that the return of service of summons upon him and the appearance of attorneys for him

in the action were wholly unknown to him until the latter part of July, 1896, after an execution had been issued against him upon the judgment. The motion was denied, and the case comes here by writ of error.

The first question with which we are confronted, is whether, if the return of the sheriff was false, and was not the result of any misconduct of the plaintiff, its falsity may be shown by the party injured, in a proceeding to vacate the judgment. Undoubtedly, under the English common law, the rule which prevailed, was that, as between parties and privies, the return of the officer was conclusive, and that it could not be questioned except in an action against him for a false return. The English rule, with such modifications as difference in modes of procedure may have suggested, has been followed by many of the courts in this country. And so, taking into consideration the several modes in which valid service may be had, it has been held that the recital in the return, of matters presumptively within the personal knowledge of the officer, is conclusive as between the parties to the suit, unless the falsity of the return is disclosed by some other portion of the record; while, in a proper proceeding, the recital of matters not presumptively within the officer's personal knowledge, may be shown to be untrue. See *Hunter v. Stoneburner,* 92 Ill. 75, *Goddard v. Harbour,* 56 Kan. 744, *Carr v. Bank,* 16 Wis. 52, and *Crosby v. Farmer,* 39 Minn. 305. This distinction does not seem to us to be based on any sound principle. The effect of a false return upon the proceeding, and upon the parties to it, is precisely the same in one case as in the other. The officer certifies that he made personal service of the writ upon the defendant, or he certifies that he left a copy of the summons at the usual place of abode of the defendant, with a member of his family over a specified age. Whether he made personal service or not is said to be within his own knowledge; but whether the place where the writ was left was in fact the usual place of abode of the party, or whether the person with whom it was left, was a member of the defendant's family, was something to be ascertained by in-

quiry, and, therefore, is said not to be necessarily within his knowledge. But either mode of service is good, and, if the defendant fails to appear, authorizes default and judgment against him. Why a defendant who is ignorant of the proceedings of the sheriff, should be compelled to submit to the hardship of being concluded by the judgment in one case, and not in the other, or why a plaintiff, who is equally ignorant of the proceedings of the sheriff, should be compelled to submit to the hardship of losing the benefit of his judgment in one case, and not in the other, is, we confess, not obvious to us. Neither are we quite able to see why there should be a conclusive presumption in one case, and not in the other. It is true that if the officer does not personally know the place of abode of the defendant, he must inquire, and must rely upon the information received, and he must also ascertain in the best way he can, whether he leaves the copy of the writ with the right person. Matters respecting which he must be guided by such outside information as he is able to procure, cannot be said to be within his personal knowledge. But, on the other hand, he may not be personally acquainted with the defendant. The latter may be a man whom he has never seen, and of whom he has never heard, and in such case he must make inquiry, and must depend upon the result of the inquiry. He may be directed to the wrong man, or he may misunderstand the direction, and make service upon the wrong man. In finding the man, he is acting upon information received from others. As it is entirely possible that the identity of the party may not be within the officer's knowledge, why should it be conclusively presumed that it is? As it is entirely possible that he may by misdirection or mistake serve the process on the wrong man, why should it be conclusively presumed that he served it on the right one? Instances of mistakes by officers in the identity of persons sought, are to be found in the books. The decisions recognize the liability of the officer to mistake in finding the proper place of service, or the proper person at the proper place, with whom the writ may be left, but he is also liable to mis-

take in finding the real party he is seeking, and hence we are
unable to understand the distinction which some of the courts
undertake to draw between the effect of service in one way,
and the effect of service in the other.

But, aside from all this, section 25 of the bill of rights
provides that no person shall be deprived of life, liberty or
property, without due process of law. The legislature has
prescribed the process necessary where life or liberty is in-
volved, and it has also prescribed the process necessary to
the rendition of judgments in civil actions, by means of which
parties may be deprived of their property. The process pre-
scribed is actual process, to be actually served, in some one
of the methods specified. A person cannot be deprived of
his life or liberty on a presumption, unless the presumption
and the fact accord, and as, in respect to process, the con-
stitution places life, liberty and property upon an equality, a
party cannot be deprived of his property, without service of
process in the manner provided by law. A presumption of
service may or may not be true, and, if it is false, a judgment
entered upon it, if it is enforced by execution, results in de-
priving the person who is the subject of the presumption, of
his property without due process of law. We concede the
force of precedents, and the respect which is due to them,
but where gross injustice may follow adherence to a prece-
dent, we do not conceive that it is binding upon courts, at
least unless it is more generally concurred in than this, that
the return by the sheriff of personal service of summons is
conclusive upon the parties. And we do not conceive that
any decision, except by the supreme court of our own state,
would authorize us to place a construction upon the language
of our constitution different from that which we believe it
will bear.

But the courts are not agreed that the return, even if it
recites personal service, is impervious to attack in a direct
proceeding by the party upon whom the service purports to
have been made, provided no rights of third persons have
intervened. In *Owen v. Ranstead*, 22 Ill. 161, the complain-

ant brought his proceeding in equity to vacate a judgment which had been rendered against him by default upon a sheriff's return of personal service of summons on him. The defendant urged that the return was conclusive upon the complainant, and could not be contradicted by him in that proceeding, and that his only remedy was an action against the officer for a false return; but the court held otherwise, saying that a judgment against the officer would be a poor equivalent for the loss of a valuable estate sold to pay the judgment, which the officer's fraud or mistake had caused, and that in all cases, if an officer, by fraud or mistake, makes a false return, a court of equity has full power to interpose and give the proper relief, and to permit the party injured, so that the remedy may be effective, to aver against the truth of the return, and show it to be false, although it is a matter of record. We are unable to see that, when the facts are understood, there is any conflict between this decision and that in *Hunter v. Stoneburner*, *supra*, cited and relied upon for the appellee. In *Owen v. Ranstead* the proceeding was between the original parties to the record, so that no injury could accrue to an innocent third person by granting the relief. But in *Hunter v. Stoneburner* the land had been sold at judicial sale, and the purchaser had sold and conveyed it to the defendants, so that rights in the property had accrued to third persons before the institution of the proceeding. Also, the complainant had ratified the sale, by receiving part of the purchase money with full knowledge of the facts. In *Ridgway v. Bank of Tennessee*, 11 Humph. 523, the allegation was that the return by the officer of service of process upon the defendant, in a suit against him to which he made no appearance, and in which judgment was rendered against him, was false. The court held that in equity he might contradict the return, saying that a judgment obtained without notice or defense, and without a day in court to make defense, was an injury to the rights of the party for which he should not be without a remedy, and that an action for a false return would be an inadequate remedy for such an injury. In *Ryan*

*v. Boyd*, 33 Ark. 778, the return recited personal service, but the court held it was not conclusive, and allowed its falsity to be shown. One of the grounds on which the relief sought was allowed, was that the rendition of the judgment without service of process was contrary to the constitutional provision that no person should be deprived of his property except by the judgment of his peers or the law of the land. In *Lane v. Jones*, 94 Mich. 540, the return of service of summons, in a suit before a justice, was challenged, because, as a matter of fact, the service was made more than twelve days before the return day. Although it is not expressly so stated, it is evident from the language of the opinion that the return did not recite the service, as to the time when made, according to the fact. There was no question of fraud in the case. The objection was interposed that it was not competent to the defendant to dispute the return, but the court held that it was. If a return of personal service is conclusive because it recites matters presumptively within the knowledge of the officer, the reason applies with manifold force to the return made in that case. An officer may be mistaken as to the person on whom he makes the service, but he knows exactly when he makes it, and if the conclusiveness of any return is to be deduced from a presumptive personal knowledge in the officer of the matters it recites, surely it must follow from a knowledge which, in the very nature of the case, is not merely presumptive, but actual; and yet the court held that even such a return could be impeached. We might refer to other authorities in the same general direction, but the foregoing are sufficient for our purpose. In our opinion any return of service of summons, no matter what its recitals, may be attacked and shown to be false by the proper party in a proper proceeding.

But the record recites the appearance of BuBois to the suit by attorney, and the transcript shows that in the several stages of the case, attorneys did assume to represent him. He denies that they did so in pursuance of any authority from him, and it is quite clear from the corroborative affida-

vits that Tabor employed the attorneys without consulting DuBois; that they, making no inquiry concerning the right of Tabor to employ them for the appellant, appeared for both defendants; that neither they nor Tabor had any conversation with DuBois concerning the suit during its pendency, and that their appearance for DuBois was inadvertence. What we have said on the question of the effect of a return of service of process when no service was in fact had, dispenses with the necessity of saying much upon the cognate question of the effect of a gratuitous appearance for a party who is ignorant of the existence of the suit in which the appearance is entered. According to the earlier English cases, a party was bound by the unauthorized appearance, and was left to his remedy against the officious attorney, unless the attorney was irresponsible so that the remedy against him would be valueless. But the doctrine was not strictly adhered to, even by the English courts, and has received, at the very most, only a partial recognition in this country. The whole question is elaborately discussed by Judge Dillon in *Harshey v. Blackmarr*, 20 Iowa, 161, in an opinion in which the authorities are exhaustively reviewed, and the conclusion reached that a judgment rendered against the defendant without service of process, and in pursuance of an appearance entered without his authority or knowledge, is a nullity. And our opinion is pronounced and emphatic that it would be repugnant to enlightened policy, as well as natural justice, to hold any person responsible for an act with which he had no connection, and of which he had no knowledge.

The next question is whether relief can be obtained by a motion, entitled in the cause, and addressed to the court which rendered the judgment, or whether the party complaining must resort to bill in equity to set aside the judgment. In several of the cases which we have cited, it is held that a judgment rendered without jurisdiction of the person may be impeached in equity, especially where a showing is made that injustice would result from the enforcement of the judgment; and it has been decided by our own supreme court in

*Wilson v. Hawthorne*, 14 Colo. 530, that a court of equity will entertain jurisdiction, in a proper case, to set aside a judgment so obtained. But, because equity will not decline jurisdiction, it does not follow that the same purpose may not be accomplished by motion. Our code provision restricting a party to six months within which to make application to be relieved from a judgment taken against him through mistake, inadvertence, surprise or excusable neglect, has no relevancy here. The privilege is granted to parties, but a person who was never served with process, and who never appeared, is not a party within the meaning of that provision. It is from his failure to do something which he might have done, that a court, by virtue of that provision, grants a party relief, when he is able to give a good reason for his failure. But where a person has no knowledge that anything is required of him, his quiescence is not a failure to do something which he might have done, and the terms, mistake, inadvertence, surprise and neglect, are not properly applicable to it. It was not the intention of the law to require a man, at his peril, to move within a specified time, who is utterly ignorant of the necessity of motion, or of the existence of anything which calls for motion. But the authority of a court to set aside its judgment, when the action is demanded by justice, is not dependent upon statute. The power is inherent, and may, in a proper case, and upon a proper showing, be exercised at any time. See *Ladd v. Stevenson*, 12 N. Y. 325. And there is no reason in sight why the questions of fact involved in a proceeding to set aside a judgment, may not be tried and determined as well and as satisfactorily upon motion as upon bill. There is no law or rule that the evidence produced for and against the motion, must be in the form of affidavits. Either party has the right to the production of the witnesses for oral examination and cross-examination in open court, or, by virtue of section 204 of the code, before a referee appointed by the court for the purpose. In *Vilas v. R. R. Co.*, 23 N. Y. 440, the court said: "In ordinary cases, where relief is sought against a judgment on the ground that the

appearance of an attorney was unauthorized, the rights of the parties can be as fully presented and as carefully adjudged on a motion as in an action. If the facts are controverted, and the court is not satisfied upon the affidavits and papers presented as to what the real facts are, it may refer the matter for the purpose of taking further evidence, and may require the parties to submit to an oral examination or cross-examination. The court, on a motion, possesses indeed all the substantial powers in conducting an investigation which formerly appertained to the chancellor. The remedy by motion is more convenient, prompt, and less expensive than by action." In *Harshey v. Blackmarr, supra,* the court said that one desiring to be relieved from a judgment rendered against him in consequence of the appearance in his behalf of an unauthorized attorney, must apply for the relief either by motion or by bill in equity. Upon the same question, the supreme court of Missouri, in *Bradley v. Welch,* 100 Mo. 258, expressed itself thus: "Whatever may have been the state of the law at one time, it is now generally held that a domestic judgment entered without the service of summons on the defendant, and on the unauthorized appearance by an attorney, may be set aside on motion timely made in the court which rendered the judgment." In a California case, *Hanson v. Hanson,* which we do not find in the California reports, but which is reported in 20 Pac. Rep. at page 736, it was held that a decree made without service of process on the defendant, and without appearance, was properly set aside on motion, and that the motion was a direct, and not a collateral, attack. And the decision in *Crosby v. Farmer, supra,* was that a judgment rendered without service of summons, might properly be attacked by motion. There are other decisions to the same purport, but those which we have noticed are enough for present purposes. In view of the consideration that a complete investigation can be had on motion, there is no valid reason why the complaining party, who has commenced by motion, should be driven to a proceeding in equity. The remedies are concurrent, and either may be selected.

It is said, however, that DuBois is chargeable with laches in the bringing of his motion. Laches is a term of flexible import; and whether it exists in a given case or not, depends upon facts and circumstances peculiâr to that case. It means something more than mere delay. Some other element must combine with the delay to constitute laches, and hence, in some cases, a party has been concluded by a delay of months or even weeks, while in others his rights have been held unaffected by a delay of years. The question ordinarily is whether during the period of delay, such changes have taken place in the position of parties, relative to the subject-matter of the litigation, as to render it inequitable to permit the enforcement of rights, concerning which otherwise there might be no difficulty. If while the injured party is unnecessarily inactive, interests of third persons have attached, or the other party, on the faith of an apparent situation, the reality of which he had no reason to doubt, has so changed his position that, if existing conditions were disturbed, he would suffer injury, the delay is chargeable as laches, and, in equity, the consequence of the laches is the loss of the remedy.

In this case, for aught that appears, the original judgment plaintiff is still the owner of the judgment; and there is nothing before us to indicate that it would be a hardship upon him to set the judgment aside, and allow the appellant to defend against the action; and, speaking with reference only to the record before us, the interval between the 13th day of December, 1895, the day of the rendition of the judgment, and the 6th day of August, 1896, the day of bringing the motion, a period of a little less than eight months,. even if the appellant might have moved immediately upon entry of the judgment, cannot in our opinion be charged against him as laches. But if the appellant first received information of the existence of the judgment against him, in the latter part of July, 1896, then certainly no question can be made upon his diligence.

We are not advised of the ground upon which the court

denied the motion. If it was that the return of personal service by the sheriff could not be impeached by evidence *dehors* the record, it was erroneous, or if it was that the showing was insufficient, it was still erroneous. No objection was taken below to the nature of the evidence by which the motion was supported, and no counter-affidavits were filed; and while the appellee had the right to insist upon a searching investigation of the facts, and to demand the production of the witnesses in court, or before a referee, for oral examination and cross-examination, yet he could waive the right and the question of fact presented, could be determined upon affidavits. See *Crosby v. Farmer, supra.* The uncontradicted affidavits here were amply sufficient to require the setting aside of the judgment.

The effect of a vacation of the judgment will be simply to enable the appellant to exercise a right of which he was deprived. Of any connection with the proceeding of the sheriff, by which the court acquired an apparent jurisdiction of the appellant, the plaintiff was, to all appearances, entirely innocent, and he is entitled to an opportunity to establish his alleged cause of action against DuBois if he is able to do so.

The order denying the appellant's motion is reversed, and the cause remanded with instructions to the court below to hear the motion upon its merits, requiring the appellant, if the appellee shall so elect, to support, and allowing the appellee to resist, the motion, by the same kind of evidence that would be requisite if the relief were sought by bill in equity instead of motion; and, if the judgment shall be set aside, to permit the appellant to plead to the complaint, tendering issues of law or fact, or both, and make his defense to the action in the same manner in all respects as he might have done if he had been duly summoned at first. The nature or merits of the defense will not be considered by the court in hearing the motion. They will be investigated at the trial, if one shall be had. To warrant the vacation of the judgment, it will be necessary only for the court to find that the

summons was not in fact served, and that the appearance in the appellant's behalf was without authority.

*Reversed.*