Maxwell, J.
The complaint herein was filed July 10, 1899.
Defendant demurred. Plaintiff confessed the demurrer, and filed an amended complaint December 1, 1899, wherein it is alleged that, on or about September 1,1883, a settlement of a rent and board account, existing between plaintiff and defendant, was made, whereby the sum of $600.00 was admitted by defend.ant to be due plaintiff.
“4. That on or about the month of February, 1883, the husband of plaintiff and their infant son died at the aforesaid family residence of plaintiff in the city of Denver, and were duly buried therefrom *125 at one and the same time, the direction, care and charge of their funeral and burial being under the management of one C. M. Miller, an undertaker of said city of Denver.
‘ ‘ 5. That defendant herein was, at the time last mentioned, and is now, not only related to plaintiff as a sister by blood, but also by marriage, plaintiff and defendant having married brothers.
“6. That, following a custom usual in their family, viz., that all arrangements for the funeral and burial of any one of their number should be attended to by the relatives of the deceased, other than those in his or her immediate family, said defendant arranged for and looked after the necessary matters pertaining to the funeral and burial of plaintiff’s deceased husband and child, and paid the undertaker’s expense thereof, but made no report thereof to plaintiff herein save to assure her that all matters had been properly attended to.
“7. That as soon as said sum of six hundred dollars ($600.00) had been mutually settled and agreed upon by and between plaintiff and defendant as the amount of the debt due to plaintiff from defendant, the latter then and there stated and represented unto plaintiff that defendant, by her husband, John Arkins, now deceased, had theretofore, on or about, to wit, February 23, 1883, paid to said O. M. Miller all of the undertaker’s funeral and burial costs and expenses of plaintiff’s deceased husband and child, and that the sum of money so disbursed and paid by defendant for said purpose aggregated exactly the sum of six hundred dollars ($600.00), and defendant asked and prayed of plaintiff that the payment by defendant of said six hundred dollars ($600.00) of said funeral expenses, should be received, held and accepted by plaintiff as satisfaction and payment in full of the debt and amount of six *126 hundred dollars ($600.00) due to plaintiff from defendant for said rent and board.
‘ ‘ 8. That such prayer and request of idefendant was granted by plaintiff, and the debt'of six hundred dollars ($600.00) of defendant to plaintiff for said rent and board, was declared paid by plaintiff, in consideration of defendant having paid six hundred dollars ($600.00) for the funeral expenses of plaintiff’s deceased husband and child.”
The complaint further alleged that plaintiff accepted the statement of defendant as true; that, December 2, 1896, plaintiff, upon inquiry, learned from the undertaker that the total costs and expenses of the funeral and burial above referred to amounted to $149.00 and no more; that at the time defendant made the statement that the funeral expenses amounted to the sum of $600.00, she knew that the same was false.
Prayer for judgment for the sum of $451.00 and interest.
The defendant interposed a demurrer to the amended complaint upon the ground that it appeared upon the face thereof that the cause of action therein stated accrued more than six years prior to the commencement of the action, and also upon the ground of laches.
The court sustained the demurrer, and dismissed the complaint.
If the complaint shows upon its face that the cause of action accrued more than six years prior to the commencement of the suit, advantage thereof may be taken by special demurrer..
The complaint must disclose a subsisting cause of action, and if, on its face, it shows that the statute of limitations has run, it should allege matters which avoid the bar raised by a special demurrer. This rule is recognized in Meyer v. Binkleman, 5 Colo. 262.
*127 Do the allegations of the complaint above quoted avoid the bar of the statute ?
It is alleged that the defendant was the agent of the plaintiff in the transaction herein involved.
“Concealment becomes fraudulent only when it is the duty of the party having knowledge of the facts to discover them to the other; and this brings back the question, "When does such duty rest upon either party to any transaction? All the instances in which the duty exists, and in which a concealment is, therefore, fraudulent, may be reduced to three distinct classes. These three classes are, in general, clearly distinct and separate, although their boundaries may sometimes overlap, or a case may fall within two of them: (1) The first class includes all those instances in which, wholly independent of the form, nature, or object of the contract or other transaction,,there i^a previous, existing, definite fiduciary relation between the parties; so that the obligation of perfect good faith and of complete disclosure always arises from the existing relations of trust and confidence, and is necessarily impressed upon any transaction which takes place between such persons. Familiar examples are contracts and other transactions between a principal and agent, a client and attorney, a beneficiary and trustee, a ward and guardian, and the like.”
The defendant being agent of the plaintiff, a duty rested upon her to disclose to her principal the truth with reference to the transaction involved in the agency. Any concealment, misstatement, misrepresentation or falsehood was fraudulent.
“They (statutes of limitations) were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or *128 extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits .tried on the common-law side of the court’s calendar as to those on the equity side.” — Bailey v. Glover, 21 Wallace 342, 349.
“The leading object of the statute (limitations) was certainly to prevent fraudulent and unjust claims from being brought forward, after such a lapse of time, that evidence might no longer be within reach of the other party, by which they could be repelled. It was not intended to deprive a party of redress, when by the act of the defendant himself he has been deprived of the opportunity of availing himself of it. To give it such a construction, would make it a means of encouraging, rather than preventing frauds. It is a general principle that no one will be permitted, in a court of justice, to claim protection by means alone of his own fraud. If the plaintiff has had knowledge of it, the statute, of course, runs against him. But if he has been kept in ignorance of his rights by the fraudulent contrivance of the defendant, does not the fraud of the latter estop him from claiming that there has been a delay in prosecuting of the suit, which his own actions have prevented from being brought at an earlier day?” — Munson v. Hallowell, 26 Tex. 475, 484.
The defendant seeks to escape the principle above announced, by invoking the aid of the well-settled principle, the presumption is that if the party affected by .any fraudulent transaction or-management,-•might with ordinary care and attention have *129 'seasonably detected it, be seasonably had actual knowledge of it, and cites Pipe v. Smith, 5 Colo. 146, 159, in support of ber contention.
Tbe cases bolding tbe above doctrine, including Pipe v. Smith, upon examination, are found to be cases wherein the facts, as disclosed by tbe record, imposed upon tbe party some duty of investigation.
In Pipe v. Smith, tbe record discloses, that the “least ordinary diligence” would have disclosed and discovered tbe fraud complained of.
In tbe case under consideration, tbe relation of principal and agent being admitted, warranted tbe plaintiff in placing implicit trust and confidence in the statements made to ber by tbe defendant, and imposed upon ber no duty of making inquiry to ascertain tbe truth or falsity thereof. The plaintiff bad a perfect right to rely implicitly upon such statements.
Our conclusion is, that the statements made by tbe defendant to tbe plaintiff, at tbe time of the settlement between them, was a fraud upon the plaintiff; that tbe concealment was such a fraud upon tbe plaintiff as to bring this case within tbe principle announced by tbe supreme court of the United States and tbe supreme court of Texas, in tbe cases above cited, and that tbe facts pleaded are a bar to tbe statute.
It is contended by defendant, that plaintiff has been guilty of such laches within the statute of limitations, as to preclude ber from maintaining this action.
Laches does not, like limitation, grow out of tbe mere lapse of time, but is founded upon tbe inequity of permitting tbe claim to be enforced, an inequity founded upon some change in the condition or relation of the property or tbe parties. — First National Bank v. Nelson, 106 Ala. 535; DuBois v. Clark, 12 Colo. App. 220, 231.
*130 The relationship of the parties is entitled to great weight when the question is one of laches in taking hostile steps, and the same prompt and energetic proceedings which would be expected in other cases ought not to be demanded of near relatives. — Wright v. Wright, 37 Mich. 55.
Keeping in view the relationship of the parties, the fact that there has been no change in the situation of the parties, or subject-matter of the action, the defense of laches cannot be sustained.
The demurrer to the amended complaint should have been overruled.
The judgment will be reversed.

Reversed.