[No. 1481.]

SMITH v. MORRILL ET AL.

| 12 | 233 |
|---|---|
| 16 | 370 |
| 16 | 371 |
| 12 | 233 |
| 17 | 466 |
| o17 | 468 |
| 17 | 469 |
| 18 | 312 |
| 32s | 461 |
| 12 | 233 |
| 36S | 201 |
| 37S | 58 |
| 38S | 464 |

1. JUDGMENTS—VOIDABLE—COLLATERAL ATTACK—PRACTICE.

Where a judgment is rendered against a party without service of summons but the record recites proper service it is classed as voidable and can be attacked only in a direct, and not in a collateral proceeding.

2. JUDGMENTS—INJUNCTIONS—DIRECT AND COLLATERAL ATTACK.

A proceeding to enjoin the enforcement of a judgment on the ground that no service of summons was had on the judgment debtor is a direct and not a collateral attack upon the judgment.

3. JUDGMENTS—MOTION TO VACATE.

Section 75, civil code, providing that a party against whom a judgment may have been rendered through mistake, inadvertence, surprise or excusable neglect may be relieved by motion for that purpose filed within six months, does not abrogate the right to an equitable action to vacate or enjoin the enforcement of a judgment rendered without service of summons.

4. JUDGMENTS—INJUNCTION.

The enforcement of a judgment rendered without service of summons, or appearance of the party against whom it is rendered, will be enjoined in an equitable proceeding for that purpose.

5. JUDGMENTS—ESTOPPEL.

A payment, upon a judgment obtained without service of summons and without appearance, made to release property from execution and to avoid expense of litigation to have the invalidity of the judgment determined was not a recognition of the validity of the judgment and would not estop the party from afterwards proceeding to enjoin the enforcement of the judgment.

6. JUDGMENTS—PROCEEDING TO VACATE—LACHES.

A delay of two years in proceeding to vacate a judgment rendered without service of summons and without appearance was not such laches as would deprive the judgment debtor of her remedy, where she thought she had been released from the judgment and where the rights of innocent third parties had not intervened and there was no showing of damage to the judgment creditor caused by the delay.

7. PRACTICE—JURISDICTION—JUDGMENTS—INJUNCTION—VENUE.

The district court has jurisdiction to entertain an application for writ
  of injunction to restrain the enforcement of an invalid judgment
  rendered in another county, and in the absence of an application
  for change of venue seasonably made the parties waive their privi-
  lege to have the proceedings conducted in the county where the
  judgment was rendered.

*Error to the District Court of Jefferson County.*

Mr. W. T. HUGHES, Mr. O. B. LIDDELL and Mr. T. B.
STUART, for plaintiffs in error.

Messrs. MORRISON & DE SOTO, for defendants in error.

WILSON, J.

This is a proceeding in equity seeking to perpetually en-
join proceedings against plaintiff (the plaintiff in error),
under a judgment claimed to be void by reason of want of
service of summons or other process upon her. The material
facts as set forth in the complaint, are that on December 15,
1892, judgment by default was rendered against this plaintiff
and others in favor of defendant Morrill by the district court
of Clear Creek county in an action of debt therein pending,
wherein Morrill was plaintiff, and this plaintiff and others
were defendants; that no service of summons or other proc-
ess in said action was had upon her, although the return of
the sheriff of Arapahoe county, wherein she resided, alleged
personal service upon her on October 13, preceding; that the
first knowledge she had of the existence of the said judgment
was when thereafter an execution was issued thereon, and
levied upon certain realty possessed by her in Arapahoe
county; that to release her realty from the lien of the exe-
cution, and to avoid the expense and delay of legal proceed-
ings to set aside and annul the judgment, she offered to pay
and did pay to plaintiff the sum of $290, upon the express
promise and agreement that he would release plaintiff and
her husband, P. T. Smith, a codefendant in the action, ab-

solutely from said judgment, and that she also paid to said plaintiff the further sum of $1.00 in consideration of the release of the levy upon her realty in Arapahoe county; that this contract and agreement of release was made on the 21st day of January, 1893; that thereafter the plaintiff Morrill assigned said judgment to defendant Charles E. Worth; that in March, 1895, another execution issued upon the judgment, and was placed in the hands of defendant George Kelly, the acting sheriff of Jefferson county, by virtue of which he levied upon and was proceeding to sell certain realty of plaintiff situate in said county; that the indebtedness upon which the judgment was rendered was not contracted by plaintiff, nor by any one by her lawfully authorized, and that she was neither legally nor equitably bound by the contracts out of which said indebtedness was said to have arisen, or any part thereof. The prayer of the complaint was that a temporary writ of injunction issue, restraining the defendants and each of them, from further proceedings under the judgment, and that the defendant sheriff be restrained from proceeding with the sale; that upon final hearing the defendants be perpetually restrained in the premises aforesaid, and the plaintiff have judgment for injunctive and equitable relief, and for such other as to the court may seem meet and proper. Defendant Morrill alone made answer. Trial was wholly to the court, which made the following special findings:

1. That no service of process was had upon plaintiff, Martha E. Smith.

2. That the plaintiffs had failed to prove that the judgment had been released.

3. That the plaintiff Martha E. Smith had an adequate remedy under section 75, Mills' Code, and that therefore she could not resort to equity. Judgment of dismissal was rendered and also against plaintiff for costs.

There is seemingly considerable conflict of authority on the pivotal questions on which the determination of this case turns. Much of it is more apparent than real, arising both

from the looseness with which many courts have used the words " void " and " voidable," as applied to judgments, and from a failure on the part of the profession to properly scrutinize and appreciate the sense and connection in which the words are used. It is an elementary principle, founded upon natural right and justice and universally recognized, that every man must have an opportunity to be heard in his defense, and that no court can pronounce a valid judgment against a party unless it has in some lawful manner acquired jurisdiction of the party. " Without such jurisdiction, a judgment is invalid and void. By it no rights are divested ; from it no rights can be obtained." As well said by Mr. Black : " It is a familiar and universal rule that a judgment rendered by a court having no jurisdiction, of either the parties or the subject-matter, is void, is a mere nullity, and will be so held and treated whenever and wherever and for whatever purpose it is sought to be used or relied on as a valid judgment. The effect of a want of jurisdiction is clearly stated in an early decision of the United States supreme court, (*Elliott v. Peirsol*, 1 Peters, 328,) in the following language : ' Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its jurisdiction be correct or otherwise, its judgment, until reversed, is regarded as binding upon every other court. But if it act without authority, its judgments and orders are regarded as nullities ; they are not voidable, but simply void, and form no bar to the recovery sought, even prior to a reversal, in opposition to them. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers.' " 1 Black on Judgments, § 218. From imperative reasons of sound policy not necessary to now discuss, it is wisely held, however, that the records of courts of general jurisdiction, should and do import verity. If, therefore, a judgment record contains facts showing that the court had jurisdiction of the party against whom judgment was pronounced, the judgment is classified as voidable only,—that is to say, it bears upon its face all of the requisites and elements

of a valid judgment, and will be so treated until determined
otherwise in some proper judicial proceeding. If, however,
the want of jurisdiction itself appears in the record, the at-
tempted judgment bears upon its face its own condemnation,
the proof of its own invalidity, and announces in itself to the
world that no valid rights have been acquired under it, by or
against any one. Such a judgment is termed void, that is,
a nullity *prima facie* and absolutely, of record as well as of
fact. It will neither be recognized nor treated as being
clothed with even an appearance of validity in any court or
in any judicial proceeding. It must be borne in mind, how-
ever, that the courts do not recognize any difference, nor is
there any, between the invalidity of the two classes of judg-
ments. There can be no degrees in void. The classification
is based upon the fact that the one shows upon its face that
it is void, and that with the other, this must be proven by
evidence *dehors* the record. The latter is none the less void,
when the lack of jurisdiction in the court to render it is
established. To hold otherwise would not only be subver-
sive of the fundamental principles upon which all judicial
authority must rest, but would be a self-evident contradic-
tion and the sanction of an unwarranted invasion of personal
rights in plain violation of all constitutional guaranties. The
distinction between, and division into, classes, has reference
solely to the manner, character and form of the proceedings
by which it is permissible to assail and avoid the judgment.
If it belongs to the voidable class, it can be impeached only
in a direct proceeding instituted for that specific purpose.
It cannot be attacked collaterally. If embraced in the other
class, its validity may be questioned in any proceeding where
it may be presented. The reasons for this distinction be-
tween methods of attack are not essential to be considered
in the determination of the issues before us. It is sufficient
to say that they are sound and conclusive. There is no
necessity for special citation of authorities to support the
propositions here advanced. They are conclusively sustained
by the fundamental principles of law, and by the reasoning

of the courts and of all law writers by whom the subjects of void and voidable judgments are discussed.

The judgment which is sought to be avoided and enjoined in the case at bar belongs to the class designated as voidable, by reason of the fact that the record recites proper service of process upon the plaintiff herein, who is complaining. We are therefore at once confronted with the question, the most material and decisive in the case, as to whether or not the proceeding instituted to avoid this judgment is proper and can be maintained. Is it a direct or collateral attack upon the judgment? In our opinion, it is clearly the former. Mr. Van Fleet defines a direct attack on a judicial proceeding to be an attempt to avoid or correct it in some manner provided by law. ·He further defines a collateral attack to be an attempt to avoid, defeat or vacate the proceeding, or to deny its force and effect, in some manner not provided by law, and adds that as there are only two ways to attack a judicial proceeding, direct and collateral, it is obvious that this latter definition complements the one given of direct attack, and that both are self-evident. Van Fleet on Collateral Attack, §§ 2, 3. In *Morrill v. Morrill*, 20 Ore. 96, a collateral attack is aptly defined to be, " An attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree, or enjoining its execution." It would follow therefore, that if the proceeding was instituted for any one of these express purposes, it would be a direct attack. In *McNeil v. Edie*, 24 Kan. 108, it was expressly held that a suit to enjoin a judgment because of a false return of service, was a direct attack. The same doctrine is affirmed in *Vance v. Miller*, 72 N. W. Rep. (Minn.) 453. Counsel seek, however, to draw a distinction between a proceeding to enjoin the execution of a judgment, and one to vacate or annul it. So far as this case is concerned, the distinction seems to us to be without a difference. The complaint contains every allegation that would be necessary in a bill to vacate, annul, declare void, or enjoin the judgment. In fact, no relief whatever could have been given

the plaintiff, unless the court first found and decreed that the judgment as to her was void, and the allegations of the complaint were amply sufficient to have sustained it.

The trial court seems to have proceeded upon the theory, however, that the plaintiff had a remedy at law, by proceeding under the provisions of section 75 of the code, and that having neglected, without sufficient excuse, to do this, she could not appeal to equity for relief. In this we think that the court was in error, as will be manifest upon a critical examination of the section. It provides that a court may relieve a party or his legal representatives from a judgment, order, or other proceeding taken against him through mistake, inadvertence, surprise or excusable neglect. Waiving the question as to whether a person, who has never been served with process, constructive or otherwise, and who has never appeared, is a party to a suit, it is clearly manifest that such a person cannot be guilty of any neglect, inadvertence or mistake, nor the victim of any surprise or accident in or about the proceedings. He had neither notice nor knowledge of them nor any connection with them. It is apparent from the language of the section that it is applicable only to cases where a party has been properly brought into court, but through some mistake, surprise or excusable negligence of himself at some stage of the proceedings, has suffered judgment. Certainly a judgment rendered when the party has never been summoned and never appeared, and hence when the court is wholly without power, cannot be said to have been a judgment suffered through mistake, inadvertence, surprise or neglect of the defendant. It is true that the concluding portion of the section provides that when for any cause the summons has not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representatives at any time within one year after the rendition of any judgment in such case to answer to the merits of the original action. This clearly, in our opinion, refers to cases wherein there has not been personal service of the summons, but where the defend-

ant has been served by publication, or by leaving a copy at his usual place of abode, or otherwise, as may be provided by law. Moreover, and it seems to us conclusive of the question, this section provides that before any relief from the judgment shall be obtained, the party seeking relief must pay, as a condition precedent, the costs which have accrued. Certainly it could not be maintained for an instant that a party who had never been served with any process, and who had never had any knowledge of proceedings against him, should be first required to pay costs, before he would be entitled to relief. We do not hold that a court could not give relief if such a party should seek it under this section, but it is quite clear, both upon reason and authority, that this is not his only remedy for such a wrong. Conceding that plaintiff could have obtained relief under code, section 75, she was not thereby precluded from pursuing the remedy which she did by proceeding in equity. *Blakeslee v. Murphy*, 44 Conn. 193; *Merriman v. Walton*, 105 Cal. 408; *Wharton v. Harlan*, 68 Cal. 425. In discussing the question of securing relief from a judgment on the ground of accident, which prevented setting up a defense on the merits, which might be said to come directly within the terms of this section, Mr. Pomeroy says, " Equity will exercise its jurisdiction on his behalf by enjoining further proceedings to enforce the judgment, or by setting it aside so that a new trial may be had on the merits." He adds, " In many states, especially in those which have adopted the reformed procedure, this particular relief is usually obtained by means of a motion for a new trial, and the necessary occasions for a resort to equity have been lessened; the equitable jurisdiction, however, has not been abrogated even in those states, and it is constantly invoked in the other commonwealths." 2 Pomeroy, Eq. Jur. § 836. If equity will therefore intervene to relieve one from the results of accident, how much more cogent the reason that it should extend its protecting arm to shield one from the attempted enforcement of a judgment rendered against him in violation, in fact, of every principle of law and right—by a court with-

out jurisdiction—a judgment which all authorities agree is invalid and void. Mr. Black says, "Equity may vacate or enjoin the judgment of a court of law when it is shown to be unjust, and that the court rendering it never had jurisdiction of the person of the defendant, although assuming it in consequence of a false return of service by the sheriff or other officer." And in a footnote, as sustaining this proposition, cites a large number of well considered cases from various states. 1 Black on Judgments, § 377.

The question, however, is entirely set at rest in this jurisdiction by decisions of our own supreme court. *San Juan, etc., Co. v. Finch*, 6 Colo. 213; *Wilson v. Hawthorne*, 14 Colo. 533. In the first cited case the court said "that a judgment rendered against a party not before the court is invalid, is a jurisdictional principle of elementary familiarity, and that a court of chancery may interpose to enjoin the execution of a judgment rendered against a party without service of process upon him, by reason whereof he does not appear and make defense to the action, is well settled by weight of authorities." In the latter case the court says, "Though the authorities are somewhat conflicting upon questions of this kind, we think that the better doctrine is that a judgment rendered without competent jurisdiction of the person may be impeached and set aside by a proceeding in equity for that purpose. This doctrine is laid down and strongly sustained by *Ridgeway v. Bank*, 30 Tenn. 523, *Hickey v. Stone*, 60 Ill. 459, *Blakeslee v. Murphy, supra*, and many other leading authorities. In some it is held to be the rule that before a party is entitled to injunctive relief, where the record recites service of process, he must first show that he has a defense to the action in which the void judgment was rendered. Without expressing any opinion as to whether that rule obtains in this jurisdiction, it is sufficient to say that if it does, the complaint in this cause shows a compliance with it.

The court having specially found the fact to be as charged that there had never been any service of process upon the plaintiff in the original action, she was entitled to a decree

declaring the judgment void as to her, and perpetually enjoining all further proceedings under it against her, unless, as claimed by counsel, she was equitably estopped by a recognition of the validity of the judgment, or laches in asserting its invalidity. So far as appears from the record before us, we do not think she was so estopped. It cannot be held that because of the payment made in January, 1893, she recognized the validity of the judgment, because she asserts that this payment was made solely to secure a release of her property from the levy of the execution, and to avoid the expense and trouble of instituting and prosecuting legal proceedings to have the invalidity of the judgment judicially determined. This was a good, as well as a reasonable, consideration. Neither can it be said that she is barred from obtaining the relief sought because she waited for two years before she instituted this suit. This might be relied upon with some force if it appeared that in the mean time the rights of innocent third parties had accrued and intervened, and would be violated by giving the relief sought. It is alleged that the judgment was subsequently assigned to defendant Worth, but he makes no defense, is not here complaining, and this court cannot make a defense for him. As to the plaintiff in the original action and the judgment creditor, he could not complain if the delay had been even much longer. It is true the court found that the plaintiff had not proven that she was released from the judgment, but she believed she was, as was testified, and this was sufficient in the absence of any showing of damage or injury suffered by the judgment creditor by reason of the delay. Moreover, there is some evidence tending to show that the delay was occasioned by the plaintiff himself, in seeking to secure service upon, and a judgment against, certain other parties who he claimed were also liable for the debt sued upon. After the agreement between the judgment creditor and the plaintiff in this suit in January, 1893, the delay of two years before it was again sought to enforce the judgment against Mrs. Smith and before such right was again asserted, were circumstances certainly calculated to confirm

her in the belief that she had been released, and sufficient to excuse her from a charge of laches by failure to sooner institute proceedings to set aside or avoid the judgment.

The defendants insist, however, that in any event the district court of Jefferson county was without jurisdiction to entertain this suit, and to grant a decree annulling, vacating, declaring void, or enjoining all proceedings under a judgment rendered by the district court of Clear Creek county; that such a proceeding must be had, and such relief could be granted only by the district court of the latter county. Section 145 of the code provides that when any injunction shall be granted to stay a suit or judgment at law, the proceedings shall be had in the county where the judgment was obtained, or the suit is pending, etc. This provision was in the territorial statutes, and was taken from the statutes of Illinois, where chancery jurisdiction was vested in courts separate and distinct from courts of common law. Waiving the question as to whether or not this section is applicable to a proceeding like the present, whose object might be technically said to be something further and beyond a mere staying of a judgment, it being one in which the court could render a decree declaring the judgment void, and vacating and annulling it, we think that it is qualified by, and should be read in connection with, chapter 2 of the code, regulating the places for trial of civil actions. Under our present system of procedure, adopted since section 145 was enacted, our state district courts have jurisdiction coextensive with the limits of the state over all persons and all subject-matters therein resident or situate. *Fletcher v. Stowell*, 17 Colo. 94. The place of trial is another question, and is one of privilege to the parties, the privilege to be claimed if desired and proper, by application to change the venue from the court of first cognizance seasonably and in due form. *Pearce v. Bordeleau*, 3 Colo. App. 351. If a party fails to make the application to change the place of trial, he thereby waives the privilege, and the court wherein the suit was instituted has the right to hear and determine it. The same might be said of section 145, regard-

less of the other sections with reference to place of trial.   It
provides that when an injunction shall be granted, the pro-
ceedings shall be had in the county where the judgment was
obtained.   We think that even giving to this section the full-
est force and effect that could be claimed for it, the district
courts having the extensive jurisdiction stated, might have
power to entertain a suit to stay a judgment at law, rendered
in a court in another county, and issue a temporary injunction
to restrain proceedings thereunder, but that the further pro-
ceedings in the cause were subject to change to the other
county; that this would be in the nature of a privilege however,
which might be waived by the party to whom it was granted.
To hold otherwise and maintain that no temporary injunction
could issue, nor suit be instituted to restrain the enforce-
ment of an invalid judgment except in the county where the
assailed judgment was rendered, might in some cases easily
result in a denial of all relief, as for instance where it was
sought to enforce a sale under execution in a county remote
from that in which the judgment was pronounced.   In such
case the party might not be able to obtain the relief in time
to save his property.   Even conceding that by the terms of
section 145 the proceedings to enjoin must be had in the
county where the judgment was rendered, we think it clear
from the language of the section, from principle, and from a
consideration of the extensive jurisdiction of the district
courts, that the proceedings referred to could in any event
be only those subsequent to the mere commencement of the
suit by the filing of a complaint and to the issuance of a tem-
porary restraining order.   In other words, this section, even
giving to it the most strict and limited construction permis-
sible, would simply specify, like the code chapter upon places
of trial, the county in which the action may or shall be tried,
subject to change of the place of trial, and not where it must
or shall be brought.   If commenced in another county, 'it is
not a jurisdictional or fatal defect.   The remedy is to change
the venue, which the court is not required to do of its own
motion, and the objection and application for a change must

be made in apt time or it is waived. *Fletcher v. Stowell, supra; R. R. Co. v. Roberts,* 6 Colo. 333; *Wasson v. Hoffman,* 4 Colo. App. 492.

For the reasons given, the judgment will be reversed.

*Reversed.*