[No. 2414.]

ARKINS v. ARKINS.

1.  **Pleading—Demurrer—Limitation.**

A complaint must disclose a subsisting cause of action, and if, on its face, it shows that the statute of limitations has run, advantage thereof may be taken by special demurrer, unless matters are alleged that avoid the bar raised by the demurrer.

2.  **Principal and Agent—Fraud.**

A duty rests upon an agent to disclose to his principal the truth with reference to the transaction involved in the agency, and any concealment, misstatement, misrepresentation or falsehood is fraudulent.

3.  **Same—Inquiry.**

Where the relationship of principal and agent exists, the principal is warranted in placing implicit trust and confidence in the agent's statements, and no duty of inquiry to ascertain the truth or falsity of such statements is imposed upon the principal.

4.  **Pleading—Fraud—Principal and Agent—Limitation.**

A complaint alleged that plaintiff and defendant were sisters and sisters-in-law; that, in 1883, plaintiff's husband and child died, and, following a custom of the family, defendant arranged for the funeral and burial and paid all the expenses thereof, but made no report, at the time, to plaintiff of the amount of such expense; that, shortly thereafter, in the same year, on a settlement between plaintiff and defendant, the sum of $600 was admitted by defendant to be due to plaintiff for rent and board. That as soon as said sum had been mutually agreed upon as the amount due plaintiff by defendant, the defendant stated and represented to plaintiff that she had paid that exact sum to the undertaker for plaintiff, and asked that the same be accepted as payment of defendant's debt to plaintiff, and plaintiff, believing said statement to be true, accepted it as payment of defendant's debt. That, in 1896, plaintiff for the

first time learned that defendant's statement was false, and that she had paid for plaintiff only $149. That defendant knew the statement to be false at the time she made it. Held, that the complaint was sufficient to allege the relationship of principal and agent between plaintiff and defendant in the payment of the burial expenses, and that the false statements made by defendant at the time of the settlement was a fraud upon plaintiff that avoided the statute of limitations until the discovery was made, and that a special demurrer to the complaint, on the grounds of limitation and laches, was erroneously sustained.

5. **Laches—Change of Condition.**

Laches does not grow out of the mere lapse of time, but is founded upon the inequity of permitting the claim to be enforced after some change in the condition or relation of the property or parties.

6. **Laches—Relationship of Parties.**

The relationship of the parties is entitled to great weight upon the question of laches. Where the parties are near relatives the same promptness expected in other cases ought not to be demanded.

*Error to the District Court of Arapahoe County.*

Mr. HARRIE M. HUMPHREYS and Mr. CHARLES A. FRUEAUFF, for plaintiff in error.

Messrs. PATTERSON, RICHARDSON & HAWKINS, for defendant in error.

MAXWELL, J.

The complaint herein was filed July 10, 1899.

Defendant demurred. Plaintiff confessed the demurrer, and filed an amended complaint December 1, 1899, wherein it is alleged that, on or about September 1, 1883, a settlement of a rent and board account, existing between plaintiff and defendant, was made, whereby the sum of $600.00 was admitted by defendant to be due plaintiff.

"4. That on or about the month of February, 1883, the husband of plaintiff and their infant son died at the aforesaid family residence of plaintiff in the city of Denver, and were duly buried therefrom

at one and the same time, the direction, care and
charge of their funeral and burial being under the
management of one C. M. Miller, an undertaker of
said city of Denver.

"5.   That defendant herein was, at the time last
mentioned, and is now, not only related to plaintiff as
a sister by blood, but also by marriage, plaintiff and
defendant having married brothers.

"6.   That, following a custom usual in their
family, viz., that all arrangements for the funeral
and burial of any one of their number should be at-
tended to by the relatives of the deceased, other than
those in his or her immediate family, said defendant
arranged for and looked after the necessary matters
pertaining to the funeral and burial of plaintiff's
deceased husband and child, and paid the under-
taker's expense thereof, but made no report thereof
to plaintiff herein save to assure her that all matters
had been properly attended to.

"7.   That as soon as said sum of six hundred
dollars ($600.00) had been mutually settled and
agreed upon by and between plaintiff and defendant
as the amount of the debt due to plaintiff from
defendant, the latter then and there stated and rep-
resented unto plaintiff that defendant, by her hus-
band, John Arkins, now deceased, had theretofore,
on or about, to wit, February 23, 1883, paid to said
C. M. Miller all of the undertaker's funeral and bur-
ial costs and expenses of plaintiff's deceased husband
and child, and that the sum of money so disbursed
and paid by defendant for said purpose aggregated
exactly the sum of six hundred dollars ($600.00), and
defendant asked and prayed of plaintiff that the pay-
ment by defendant of said six hundred dollars
($600.00) of said funeral expenses, should be re-
ceived, held and accepted by plaintiff as satisfaction
and payment in full of the debt and amount of six

hundred dollars ($600.00) due to plaintiff from defendant for said rent and board.

"8.    That such prayer and request of defendant was granted by plaintiff, and the debt of six hundred dollars ($600.00) of defendant to plaintiff for said rent and board, was declared paid by plaintiff, in consideration of defendant having paid six hundred dollars ($600.00) for the funeral expenses of plaintiff's deceased husband and child."

The complaint further alleged that plaintiff accepted the statement of defendant as true; that, December 2, 1896, plaintiff, upon inquiry, learned from the undertaker that the total costs and expenses of the funeral and burial above referred to amounted to $149.00 and no more; that at the time defendant made the statement that the funeral expenses amounted to the sum of $600.00, she knew that the same was false.

Prayer for judgment for the sum of $451.00 and interest.

The defendant interposed a demurrer to the amended complaint upon the ground that it appeared upon the face thereof that the cause of action therein stated accrued more than six years prior to the commencement of the action, and also upon the ground of *laches*.

The court sustained the demurrer, and dismissed the complaint.

If the complaint shows upon its face that the cause of action accrued more than six years prior to the commencement of the suit, advantage thereof may be taken by special demurrer.

The complaint must disclose a subsisting cause of action, and if, on its face, it shows that the statute of limitations has run, it should allege matters which avoid the bar raised by a special demurrer. This rule is recognized in *Meyer v. Binkleman,* 5 Colo. 262.

Do the allegations of the complaint above quoted avoid the bar of the statute?

It is alleged that the defendant was the agent of the plaintiff in the transaction herein involved.

"Concealment becomes fraudulent only when it is the duty of the party having knowledge of the facts to discover them to the other; and this brings back the question, When does such duty rest upon either party to any transaction? All the instances in which the duty exists, and in which a concealment is, therefore, fraudulent, may be reduced to three distinct classes. These three classes are, in general, clearly distinct and separate, although their boundaries may sometimes overlap, or a case may fall within two of them: (1) The first class includes all those instances in which, wholly independent of the form, nature, or object of the contract or other transaction, there is a previous, existing, definite fiduciary relation between the parties; so that the obligation of perfect good faith and of complete disclosure always arises from the existing relations of trust and confidence, and is necessarily impressed upon any transaction which takes place between such persons. Familiar examples are contracts and other transactions between a principal and agent, a client and attorney, a beneficiary and trustee, a ward and guardian, and the like."

The defendant being agent of the plaintiff, a duty rested upon her to disclose to her principal the truth with reference to the transaction involved in the agency. Any concealment, misstatement, misrepresentation or falsehood was fraudulent.

"They (statutes of limitations) were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or

extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."—*Bailey v. Glover,* 21 Wallace 342, 349.

"The leading object of the statute (limitations) was certainly to prevent fraudulent and unjust claims from being brought forward, after such a lapse of time, that evidence might no longer be within reach of the other party, by which they could be repelled. It was not intended to deprive a party of redress, when by the act of the defendant himself he has been deprived of the opportunity of availing himself of it. To give it such a construction, would make it a means of encouraging, rather than preventing frauds. It is a general principle that no one will be permitted, in a court of justice, to claim protection by means alone of his own fraud. If the plaintiff has had knowledge of it, the statute, of course, runs against him. But if he has been kept in ignorance of his rights by the fraudulent contrivance of the defendant, does not the fraud of the latter estop him from claiming that there has been a delay in prosecuting of the suit, which his own actions have prevented from being brought at an earlier day?"—*Munson v. Hallowell,* 26 Tex. 475, 484.

The defendant seeks to escape the principle above announced, by invoking the aid of the well-settled principle, the presumption is that if the party affected by any fraudulent transaction or management, might with ordinary care and attention have

seasonably detected it, he seasonably had actual knowledge of it, and cites *Pipe v. Smith,* 5 Colo. 146, 159, in support of her contention.

The cases holding the above doctrine, including *Pipe v. Smith,* upon examination, are found to be cases wherein the facts, as disclosed by the record, imposed upon the party some duty of investigation.

In *Pipe v. Smith,* the record discloses, that the "least ordinary diligence" would have disclosed and discovered the fraud complained of.

In the case under consideration, the relation of principal and agent being admitted, warranted the plaintiff in placing implicit trust and confidence in the statements made to her by the defendant, and imposed upon her no duty of making inquiry to ascertain the truth or falsity thereof. The plaintiff had a perfect right to rely implicitly upon such statements.

Our conclusion is, that the statements made by the defendant to the plaintiff, at the time of the settlement between them, was a fraud upon the plaintiff; that the concealment was such a fraud upon the plaintiff as to bring this case within the principle announced by the supreme court of the United States and the supreme court of Texas, in the cases above cited, and that the facts pleaded are a bar to the statute.

It is contended by defendant, that plaintiff has been guilty of such *laches* within the statute of limitations, as to preclude her from maintaining this action.

*Laches* does not, like limitation, grow out of the mere lapse of time, but is founded upon the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property or the parties.—*First National Bank v. Nelson,* 106 Ala. 535; *DuBois v. Clark,* 12 Colo. App. 220, 231.

The relationship of the parties is entitled to great weight when the question is one of *laches* in taking hostile steps, and the same prompt and energetic proceedings which would be expected in other cases ought not to be demanded of near relatives.—*Wright v. Wright,* 37 Mich. 55.

Keeping in view the relationship of the parties, the fact that there has been no change in the situation of the parties, or subject-matter of the action, the defense of *laches* cannot be sustained.

The demurrer to the amended complaint should have been overruled.

The judgment will be reversed.

*Reversed.*