No. 12,240.

CONRAD *v.* SCOTT, ET AL.

Decided May 27, 1929.

Mr. JOHN F. MAIL, for plaintiff in error.

Mr. C. A. ERWIN, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

CONRAD, plaintiff in error, sued Scott and nominal defendants to foreclose the lien of a deed of trust covering Colorado land, dated February 1, 1888, and given to secure the payment of a certain note for $300, of even date, payable in 5 years with interest thereon at 7 per cent per annum to maturity and thereafter at the rate of 10 per cent per annum. Six defenses were interposed by Scott, all of which, except that of laches, were determined in favor of Conrad. The court held Conrad guilty of laches and dismissed the suit. This writ is prosecuted to review this ruling.

The record discloses that in 1906, Scott acquired title to the land, subject to the deed of trust sued upon, paying $40 therefor; that thereafter he fenced the same, paid taxes thereon and has ever since been in possession thereof; that no demand for payment of said note was made. This evidence disclosed mere delay in bringing this suit. This is insufficient to constitute laches under the following decisions:

21 C. J. 219, §218: "Lapse of time is an important element of laches, yet, unless a case falls within the operation of the statute of limitations, there is no fixed period within which a person must assert his claim or be barred by laches; the length of time depends on the circumstances of the particular case. Laches is not, like limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be

enforced, an inequity founded on some intermediate change in conditions. Whether a delay in asserting one's rights constitutes laches depends on whether it was reasonable under the circumstances. If the delay was reasonable, it does not of itself bar relief, if unreasonable, relief will ordinarily be denied.

"§219.  * * * In some cases long lapse of time has been held sufficient of itself to prevent relief.  But mere delay in asserting a right does not ipso facto bar its enforcement in equity, by the great weight of authority, unless the case is barred by the statute of limitations.  To constitute a defense, the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, as through loss or obscuration of evidence of the transaction in issue, or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted, or, as commonly phrased, the delay must have worked injury, prejudice or disadvantage to defendant or others adversely interested, or plaintiff must have abandoned or waived his right, or acquiesced in the assertion or operation of the adverse right, or lost his own right by estoppel; or sufficient time must have elapsed to create or justify a presumption against the existence or validity of plaintiff's right; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived or has been satisfied, or that in consequence of the delay the adverse party would be inequitably prejudiced by the enforcement of the right asserted.  There are indeed cases in which the courts have apparently or avowedly applied the doctrine of stale demand in its strict sense, and have denied relief because of mere delay on the part of plaintiff in seeking to enforce his rights. Read in the light of the peculiar facts under consideration, however, as all judicial opinions must be read, such decisions may be explained and harmonized on one

theory or another with the prevailing rule that mere delay does not of itself bar equitable relief.'"

The same rule is laid down in 10 R. C. L. 396, §143 and is as follows: "While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally accepted doctrine appears to be that laches is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relations of the property or the parties. Since lapse of time has a tendency to obscure evidence, and often makes it impossible to discover the truth, it is, of course, one of the elements to be considered by the court in applying laches to stale claims, but it is only one, and while important, it is not ordinarily the controlling or most important one. Hence, it has been said, laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief."

The Colorado cases are substantially in accord therewith.

*DuBois v. Clark*, 12 Colo. App. 220, 231, 55 Pac. 750: "Laches is a term of flexible import; and whether it exists in a given case or not, depends upon facts and circumstances peculiar to that case. It means something more than mere delay. Some other element

must combine with the delay to constitute laches, and hence, in some cases, a party has been concluded by a delay of months or even weeks, while in others his rights have been held unaffected by a delay of years. The question ordinarily is whether during the period of delay, such changes have taken place in the position of parties, relative to the subject-matter of the litigation, as to render it inequitable to permit the enforcement of rights, concerning which otherwise there might be no difficulty. If while the injured party is unnecessarily inactive, interests of third persons have attached, or the other party, on the faith of an apparent situation, the reality of which he had no reason to doubt, has so changed his position that, if existing conditions were disturbed, he would suffer injury, the delay is chargeable as laches, and, in equity, the consequence of the laches is the loss of the remedy."

*Farris v. Wirt,* 16 Colo. App. 1, 6, 63 Pac. 946: "Delay alone is not laches. During the delay, some new condition must have intervened which would render the enforcement of rights, otherwise unimpeachable, contrary to the principles of equity. *Dubois v. Clark,* 12 Colo. App. 220."

*Keely v. East Side Improvement Co.,* 16 Colo. App. 365, 371, 65 Pac. 456: "There does not appear to have been any unreasonable delay after knowledge of the sales in bringing suit to vacate same; there was no change whatever in the status of the property as to ownership, or otherwise, between the date appellees obtained such knowledge and the institution of the present suit; such facts do not constitute laches. *DuBois v. Clark, supra; Smith v. Morrill, et al., supra.*"

In *Woodruff v. Williams,* 35 Colo. 28, 61, 85 Pac. 90, the doctrine announced in the DuBois case, supra, is quoted and approved.

*Helm v. Brewster,* 42 Colo. 25, 39, 93 Pac. 1101: "Laches in bringing an action cannot be successfully interposed as a defense unless delay in this respect has in-

juriously affected the party against whom suit is brought, or his position has been altered to his prejudice thereby. *Morgan v. King,* 27 Colo. 539; *Farris v. Wirt,* 16 Colo. App. 1; *DuBois v. Clark,* 12 Colo. App. 220.''

*Arkins v. Arkins,* 20 Colo. App. 123, 129, 77 Pac. 256: ''Laches does not, like limitation, grow out of the mere lapse of time, but is founded upon the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property or the parties. *First National Bank v. Nelson,* 106 Ala. 535; *DuBois v. Clark,* 12 Colo. App. 220, 231.''

*Stubbs v. McGillis,* 44 Colo. 138, 143, 96 Pac. 1005: ''The contention that the defendant ought not to be heard to assert, after five years, that process was not served upon him, might be relied upon if it appeared that in the meantime rights of innocent third parties had accrued and would be violated by giving the relief sought. In the absence of such contention or proof touching the same, or in the absence of an allegation that the plaintiff is in any different position from what he would have been, had the defendant sooner moved against the judgment, the delay of the defendant will not be held to prevent his now doing so. *Keely v. East Side Imp. Co.,* 16 Colo. App. 365; *DuBois v. Clark,* 12 Colo. App. 220; *Smith v. Morrill,* 12 Colo. App. 233.''

*Wenig v. Lyons,* 81 Colo. 6, 9, 252 Pac. 889, cites the DuBois case, supra, as authority for the following statement: ''It does not appear that during the interval between the entry of the decree and the filing of the motion to vacate it, the situation of Lyons was altered to his disadvantage in any respect.''

Applying the doctrine announced in the preceding cases to the instant suit, it is apparent that the lower court erred in determining that the plaintiff in error was guilty of laches and could not recover. Scott purchased the property subject to the deed of trust. He has paid no part of the principal or interest of the note secured thereby. Everything he has done in connection with

the property was with full knowledge of the existence of said deed of trust and note. Under these circumstances, to hold that Conrad cannot be permitted to foreclose the lien of said deed of trust, would operate to cancel a just debt which Scott should pay. Equity operates to prevent an injustice, not to perpetrate one.

This case must be reversed and the lower court directed to proceed with the foreclosure involved. It is proper to call attention to the fact that the deed of trust provides for 12 per cent interest after maturity while the note provides for 10 per cent interest after maturity. In computing interest, the note controls.

Reversed and remanded.

Mr. Justice Adams sitting for Mr. Chief Justice Whitford, Mr. Justice Butler, Mr. Justice Burke and Mr. Justice Alter concur.

Mr. Justice Campbell dissents.