**AMERICAN EMPLOYERS INSURANCE COMPANY, Appellant,**

v.

**Charles E. CARNEY, Appellee.**

**No. 24700.**

United States Court of Appeals Fifth Circuit.

March 12, 1968.

Rehearing Denied April 19, 1968.

Robert G. Tate, Birmingham, Ala., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel, for appellee.

Before BROWN, Chief Judge, GEWIN and WRIGHT,* Circuit Judges.

GEWIN, Circuit Judge:

Suit was brought by American Employers Insurance Company, appellant, in the United States District Court for the Northern District of Alabama against Charles E. Carney, appellee, to recover $35,693.87 on a non-negotiable promissory note executed by R. C. Cooke in 1956 and indorsed by appellee, plus attorney's fee and costs. The district court concluded that installments due on the note in 1957, 1958 and 1959 were barred by the statute of limitations of six years and therefore entered judgment for appellant in the sum of $28,435.37 plus $3,000 as a reasonable attorney's fee. This appeal followed. We affirm.

On January 23, 1956, R. C. Cooke executed as maker a non-negotiable promissory note payable to appellant in the sum of $38,573.84, payable in annual installments of $5,000.00 commencing November 1, 1957, with interest from maturity at 5% per annum. Appellee indorsed the above note and, on the same date, executed as maker a similar note for $22,621.53 payable in annual installments of $3,000.-00, commencing November 1, 1957, which note was indorsed by Cooke. The two notes were transmitted to appellant with a letter which read in part as follows:

"We are giving you these notes upon the understanding and agreement that no legal action will be taken against either of the undersigned as an indorser as long as such indorser is not in default in the payments on the note signed as maker. Of course, if either of the undersigned become in default on the note signed as maker legal action may be taken against him as an indorser provided that note is in default. Of

Timothy M. Conway, Jr., Birmingham, Ala., Rives, Peterson, Pettus & Conway, Birmingham, Ala., of counsel, for appellant.

* Of the District of Columbia Circuit, sitting by designation.

course, when the undersigned as maker pays his note in full he would then become liable and subject to legal action for any amount due on the note he signed as indorser."

Cooke died in July 1957, before his first installment became due. His estate was subsequently declared insolvent and on July 1, 1961, appellant received from the estate the net amount of $2,119.18 which it applied to the Cooke note.[1] The note executed by appellee as maker was paid according to schedule, the last installment being paid in December, 1964.

Suit was filed against appellee on April 8, 1966, more than six years after the 1957, 1958 and 1959 installments became due on the note which he indorsed, but less than two years after he had paid in full his note as maker. The last installment on Carney's note was due November 1, 1964 and he paid it in December 1964.

The pre-trial order spelled out the issues as follows:

"Plaintiff claims of defendant the sum of $35,693.87, together with interest and a reasonable attorney's fee, on a promissory note in the amount of $38,-573.84, executed by R. C. Cooke on January 23, 1956, * * * which note was indorsed by defendant.

"Defendant pleads the Alabama statute of six years [Code of Ala., Title 7, § 21], both as to the principal amount stated in such note and as to each installment due thereunder.

"Plaintiff relies upon the letter of January 23, 1956, signed by Cooke and Carney, transmitting the respective notes upon which they were makers

and indorsers to plaintiff, * * * to avoid the bar of the statute of limitations."

The district court held that the expressions contained in the letter transmitting the notes should not be construed as a part of such notes and that the provision in each note for the time of its payment governed for the purpose of applying the statute of limitations, citing Brown v. First National Bank of Montgomery, 261 Ala. 565, 75 So.2d 141 (1954). The court therefore concluded that all installments due November 1, 1957, to November 1, 1959, were barred by the statute.

After giving careful and cautious consideration to the holding of the district court wherein there is strong reliance on the case of Brown v. First National Bank of Montgomery, supra, we are firm in our conclusion that the district court reached the right conclusion based on the law of Alabama. Under the Erie doctrine we are bound to follow the law of Alabama whether we approve or disapprove of the rules established thereby.[2] Since we agree with the district court, we find it unnecessary to indulge the presumption that the distinguished district judge who sits in Alabama and is familiar with its laws is better able to resolve complex questions as to state law than we are as appellate judges.[3]

In the *Brown* case Mrs. M. Brown filed a claim in 1952 against the estate of Ellen W. Jackson, deceased, on two notes executed by Miss Jackson, a note for $250.-00 payable to M. M. Brown dated August 3, 1938, and a note for $500.00 payable to

---

1. The court allowed the credit as having been applied to the installments held to be barred. Under Alabama law a partial payment will interrupt the running of the statute if the payment is made *by the party sought to be charged.*

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. Professor Wright states the rule as follows:
   "As a general proposition, a federal court judge who sits in a particular state and has practiced before its courts may be better able to resolve complex questions as to the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state. For this reason federal appellate courts have frequently voiced reluctance to substitute their own view of the state law for that of the federal judge."
   Wright, Federal Courts, p. 206 (1963).

M. M. Brown and wife dated January 26, 1938. The note dated August 3, according to its terms, was payable "six months after date." The note bearing the date of January 26 was payable "one year or upon request after date. * * *" The administrator of the Jackson estate denied the claim on the ground that it was barred by the statute of limitations of six years.

Mrs. Brown relied on certain letters written by Miss Jackson which she contended altered the date of payment as set forth on the face of the notes. Her contention was stated in the Alabama opinion as follows:

> "But appellant argues that the notes were not payable until the death of the maker.
>
> "As previously indicated, there is nothing on the face of either note to support such a contention. But appellant says that the notes should be read in connection with letters written by Miss Jackson when she transmitted the notes to the payees and that when so read it is made to appear that Miss Jackson intended for the notes to be payable on her death."

One of the letters written by Miss Jackson stated:

> "I was hoping you would get lots more then I would not have minded asking you. But know that when you are ready to use it I can give it back to you. It has helped me out more than I know how to tell you, and you and Marion were surely kind to do it. Don't worry about it for if I live I will pay it back and if I should die I have plenty of insurance to take care of my debts.
>
> "I am enclosing a note payable to you and Marion, one year from now or on request. Keep this so if anything happens to me you will have proof and can collect out of the insurance payable to my estate."

In rejecting the foregoing contention the Alabama Supreme Court observed that notes and mortgages securing them are often executed contemporaneously as a part of the same transaction and are to be construed together. Notwithstanding such rule and practice the court concluded that even in the case of a mortgage and note executed contemporaneously the terms of the note would control over the terms of the mortgage if there were conflicting and irreconcilable provisions as to the time of payment. On this question the court stated:

> "However, when the note and mortgage contain conflicting and irreconcilable provisions as to the character or terms of the debt, or the time for its payment, *the note will govern as being the principal obligation.* 10 C.J.S., Bills and Notes, § 45, p. 484; Pacific Fruit Exchange v. Duke, 103 Cal.App. 340, 284 P. 729; Conrad v. Scott, 86 Colo. 115, 278 P. 798; Hotel Management Co. v. Krickl, 117 Fla. 626, 158 So. 118." (Emphasis added)
>
> "No case has come to our attention wherein any court has held that expressions in a letter accompanying a note should be construed as a part of the note."

Finally, after considering the intention of the parties and observing that the maker "would wish" to have the claim paid, the court disregarded such intention and categorically concluded: "But the letter cannot change the time of payment fixed in the notes." [4] In view of the foregoing firm, unequivocal and unambiguous holding of the Alabama Supreme

---

4. This conclusion was reached even though the court recognized the equitable considerations involved. The following is from the opinion:
   "A reading of the record in this case shows that appellant frequently befriended Miss Jackson and that the latter was greatly appreciative of appellant's kindness. There can be no doubt of the fact that the relationship of the parties was such that Miss Jackson would wish to have appellant's claim paid from the estate—the insurance to which she referred in her letter. But the letter cannot change the time of payment fixed in the notes."

Court, we are bound to the conclusion reached by the district court to the effect that the letter involved in this case cannot change the terms of the note because there is nothing on the face of the note to support such a contention and the letter cannot change the time of payment fixed in the note. Perhaps it is unfortunate that the notes make no reference to the letter, but we are bound by the facts as they are.

■ Further, the letter in our view is not sufficient under Alabama law to remove the bar of the statute of limitations. See Code of Ala. (1940 recomp. 1958), Tit. 7, § 40;[5] Chapman v. Barnes, 93 Ala. 433, 9 So. 589 (1891). Also, while one may, by his own actions, be estopped from pleading the statute of limitations, Kessler v. Peck, 266 Ala. 669, 90 So.2d 606 (1957), the record in this case contains no evidence of any action or conduct on the part of the appellee which would estop him from pleading the statute. The note here involved and the letter upon which appellant relies bear the same date, January 23, 1956. As noted earlier suit was not filed until April 8, 1966. Even if the letter were to be considered as a promise not to plead the statute of limitations the statute also runs against the promise as well as the notes. Whitfield v. Hatch, 235 Ala. 38, 177 So. 149 (1939); Adams v. Cameron,[6] 95 Ala. 344, 10 So. 506 (1892).

Judgment affirmed.

5. This section provides:
    "No act, promise, or acknowledgement is sufficient to remove the bar to a suit created by the provisions of this chapter, or is evidence of a new and continuing contract, except a partial payment made upon the contract by the party sought to be charged before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby."

6. In Adams v. Cameron the court stated:
    "There is some testimony tending to show that, before the 10 years expired after the execution of the bill single, Martha Cameron asked her brother to renew the contract, and that

he replied 'it would never run out of date.' It is contended for appellant that this estops appellees from interposing the defense of the statute of limitations. There are several answers to this. It was only a promise not to plead the statute of limitations, and the statute runs against that promise as well as against the bill single itself."

See also Miller v. Chemstrand Corp., 331 F.2d 374, 377 (5 Cir. 1964).

Moreover, in Whitfield v. Hatch the court concluded:
    "No one can claim to have altered his position for the worse from acts or promises which the law warns him he must not depend upon."