No. 17,110.

LANDY ET AL *v*. JORDAN.
(266 P. [2d] 1115)

Decided February 15, 1954.   Rehearing denied April 5, 1954.

Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, for plaintiffs in error.

Mr. J. NELSON TRUITT, for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

EDNA MAY JORDAN, as plaintiff, brought action in the trial court of enjoin further proceedings in a real-estate foreclosure action by the public trustee; for judgment annuling and vacating the sale of her premises pursuant thereto; and to cancel and declare void the certificate of purchase issued thereupon. Plaintiffs in error, Landy and Susman, who are not identical with counsel of the same names who represent them, are the holders by assignment of the certificate of purchase and we will hereinafter refer to them as defendants. The original loan was procured by plaintiff from Capitol Federal Savings and Loan Association of Denver, a corporation, hereinafter designated as Capitol. During the progress of the action in the trial court and upon showing that Capitol had assigned its certificate of purchase to defend-

ants, dismissal was entered as to Capitol. The public trustee filed disclaimer and for that reason is not a party in the present proceeding.

Under date of September 18, 1947, plaintiff procured from Capitol a loan in the principal sum of $2500.00 represented by her promissory note secured by deed of trust of even date therewith on certain lands and premises in the City of Denver belonging to her. June 29, 1950, Capitol filed with the Public Trustee its notice of election and demand for sale, charging that plaintiff had defaulted in the payment of principal and interest due October 15, 1947, and likewise in the payment of additional indebtedness due on May 29, 1950.

The issue as to whether either of the alleged defaults claimed existed in fact are the only material questions presented on this review. The trial court found that there was no delinquency in either instance and with this finding we agree. The promissory note involved, in part reads as follows: "In monthly installments (or payments) after date for value received, I * * *, promise to pay to Capitol * * *, the sum of TWENTY-FIVE HUNDRED AND NO/100 Dollars, and such additional sums as may be advanced hereon by the said Association, with interest on the unpaid balance at the rate of fifty cents per month on each $100.00 (and in like proportions on lesser amounts) until paid in full. Monthly installments of $30.00 shall be payable on or before the 15th day of each and every calendar month until the principal with interest as above shall be paid in full, beginning October 15th, 1947."

To use a term apparently common to the business, after the granting of the loan, it was "set up" on the books of Capitol with $54.00 deducted from the amount of the loan and placed in a "reserve for taxes and insurance" to which reserve was to be added additional sums of $7.00 per month, thus making the monthly installment $37.00 instead of $30.00 as provided by the note.

It is admitted that the payment due October 15,

1947, was not made, and that the first installment paid on the note was November 21, 1947, a payment of $40.00 by the lessee of the premises covered by the deed of trust pursuant to assignment of rents by plaintiff to Capitol. From that date on, the tenant continued to pay the rental to Capitol, less an occasional deduction for water rental or similar item. From each and every payment there was first deducted the amount of $7.00 set aside under the reserve for taxes and insurance, which fund at the end of June, 1950, showed a balance of $81.52. It is contended that, since the first installment was not paid on its due date of October 15, 1947, the note was in continuous delinquency, subject, under its acceleration clause, to election on the part of the holder to declare the full amount due and payable at any time. It further is contended that the position of the holder of the note in the foregoing notice was not changed or modified by the fact that no default was declared until June 29, 1950, notwithstanding the current regular monthly payments made through the application of the rental money. To agree with this contention would require adherence to highly technical interpretation of the rather ingenious provisions of the note in question, which strongly carries the impression that this intricate design was intentionally woven. The payments, as noted, become due on the 15th of each month, while the interest is to be calculated and added on the first day of each month, thus making it necessary for one who thinks he is borrowing money at six per cent interest per annum to pay interest on interest for at least a part of each month and in addition pay interest on charges for late payments; also, finally, the record on the ledger sheet is so arranged by the company that under ordinary conditions the note would necessarily be delinquent on the first payment. We, however, decline to follow this intricate calculation through its various evolutions as it easily may be determined that on the 29th day of June, 1950, either there was no default existing at all or, if

there was, it was very slight and covered only a part of a month. If there be no default at the time of the election, it is immaterial what default there may have been prior thereto. On June 6, 1950, slightly over thirty-two months after the date of the note, there had been paid in to Capitol for credit on principal and interest, and in addition to the $7.00 per month set up in the reserve for taxes and insurance account, a total of $972.71; whereas, at $30.00 per month, the payment required under the provisions of the note, would amount to $960.00, or a credit balance of $12.71. On June 15, 1950, the payment being slightly delayed, there would be a technical delinquency from that date until the 5th day of July, when a further payment was made, but that would cover only part of a month and only part of the monthly payment. Another calculation that would seem interesting, would be to figure interest at a straight six per cent per annum on $2500.00 for the full period of two years, seven months and eighteen days, without allowance for credits on principal at all, which would make a total of $395.00, plus $2500.00 capital, or a grand total of interest and principal of $2895.00, on which payments have been received in the sum of $972.71, leaving a balance of principal of $1922.29 on June 6, 1950, after the application of credit that day made; whereas the Capitol ledger sheet, after applying proper credits to principal account and by deducting the sum of $1025.00 added as attorneys' fees and hereinafter discussed, shows a balance on June 6, 1950, of $1928.29. We cannot believe, and in good conscience cannot approve, any contention of substantial delinquency on the part of plaintiff existing on June 29, 1950, because of nonpayment of installments.

The second claimed default or delinquency comes about by reason of a provision in the trust deed to the effect that Capitol should have the right to defend suits involving title to the premises at the expense of borrower. The trust deed also contains the following stipulation: "That all sums expended as costs of such litiga-

tion or advanced by the Association in any other contingency herein mentioned, including any attorney's fees reasonably incurred, shall be paid by Borrower upon demand, or as may be expressly arranged by the Association, and such sums with interest thereon at the rates provided in said Promissory Note shall become so much additional indebtedness secured by this Deed of Trust and shall be a lien on said premises prior to any right, title or interest attaching or accruing subsequent to the lien hereof, and shall be paid out of the proceeds of the sale of the property aforesaid, if not otherwise paid by Borrower."

Following the execution and delivery of said note and trust deed, plaintiff was made defendant in one or more suits attacking title to the property covering said lien, and notwithstanding that she defended said actions, Capitol likewise employed attorneys and defended on its own behalf. At the termination of all such litigation Capitol charged on its books to plaintiff the sum of $1025.00 as attorneys' fees, and notified plaintiff to this effect on May 29, 1950. Plaintiff failing to call at Capitol's office with regard to said matter, under date of June 7, 1950, Capitol wrote plaintiff making demand for payment of said sum of $1025.00 on or before the 20th day of June, 1950. It is because of plaintiff's failure to pay said sum of $1025.00 on or before June 20th that Capitol claimed default in accordance with the provisions of the trust deed as of May 29, 1950.

There is no disposition on the part of plaintiff to object to the assessment of attorney fees in the sum of $1025.00 by Capitol as unreasonable, and she has not, and does not, refuse payment thereof, but she and her counsel insist that under the provisions of the promissory note, said sum of $1025.00 should have been added to the principal of the note and thereafter become payable at the rate of $30.00 per month in accordance with the provisions thereof.

Referring again to that part of the promissory note

hereinbefore quoted, the following language should be noted: "the sum of Twenty-five Hundred and no/100 Dollars, and such additional sums *as may be advanced hereon* * * *." (Emphasis supplied.) This, of course, was to be paid in monthly installments of $30.00. There also is the following provision in the body of the said note: "It is further agreed that if and when Maker shall have failed to make a monthly payment as required, the Association shall add the incidental delinquent monthly interest item *and all advances* to the principal of the indebtedness remaining unpaid at the end of such calendar month, to establish the basis for computing interest for the next succeeding month." (Emphasis supplied.) This is exactly what Capitol did on its ledger account. It added thereto the $1025.00 on May 29, 1950, and the ledger account shows interest calculated thereon.

The question presented is whether or not Capitol was entitled to demand immediate payment of the $1025.00 advancement for attorney fees, as would seem to be implied by the language of the trust deed, or whether such sums so advanced would be added to the principal of the note and payable at the rate of $30.00 per month, as provided in the promissory note. Several authorities are cited in the brief of plaintiffs in error to the effect that courts will enforce provisions of deeds of trust identical or similar to that involved in the instant case. There is no doubt that such is the law, but the issue presented here is not that simple. The question presented here is, where there is a difference between the provisions of a note and those of the deed of trust securing payment thereof or an ambiguity or uncertainty arises in that connection, which shall prevail? Here, definitely, there is a variance between the provisions of the note and those of the trust deed, if not in express language, certainly sufficient to cause ambiguity and uncertainty. A general rule of construction is that, instruments of this nature are always to be construed

most liberally in favor of the party who had no part in preparation of the documents.

A note and deed of trust certainly are supplemental, but it is the universal rule that where they are antagonistic or at variance or where uncertainty or ambiguity exists, the terms of the note govern. This is because the note represents the principal obligation, the trust deed merely being incidental thereto and for the purpose of securing payment thereof. *Conrad v. Scott,* 86 Colo. 115, 278 Pac. 798; *Interstate Finance Company v. Brink,* 232 Iowa 733, 6 N.W. (2d) 120, 143 A.L.R. 587; *Wells v. Smith* (Texas Civil App.) 144 S.W. (2d) 430; *Pacific Fruit Exchange v. Duke,* 103 Cal. App. 340, 284 Pac. 729; *Smith v. Kerr,* 130 Me. 433, 157 Atl. 314, in which a number of decisions and other authorities are cited.

The remaining contention of defendants is that, having procured the certificate of purchase from Capitol by assignment of December 13, 1950, following the foreclosure sale which was held on September 5, 1950, they are innocent purchasers for value and not subject to the defense applicable here to Capitol as a party. This contention needs no comment other than to say that it is a principle of law so well known as to need no citation of authority that an assignee of a certificate of purchase stands in no better position before the law than that occupied by the assignor. All defenses applicable to Capitol likewise are appropriate as against Capitol's assignees.

It follows that because of our affirmance of the judgment of the trial court, the re-establishment of the indebtedness on a proper footing will require certain accounting and adjustments. These are not within the purview of this review, yet we would feel remiss in our duty were we to fail to call attention to one or two matters which otherwise might be overlooked in the necessary accounting hereinafter to be had.

We already have called attention to the fact that on

June 6, 1950, when Capitol claimed plaintiff was in default of the installment payments, the fund designated reserve for taxes and insurance carried a credit balance. This same account on December 13, 1950, when the certificate of purchase was assigned by Capitol to defendants, carried a credit balance of $67.52 not otherwise accounted for. The record is clear that the property was sold on September 5, 1950, for the principal amount of $3031.49, $48.01 interest, costs, charges and fees including $150 attorney fees for foreclosure, to bring the entire account up to $3284.57, which was the amount paid by Capitol and stated in the certificate of purchase. December 13, 1950, counsel for defendants arranged the purchase of said certificate from Capitol for the amount of said bid, $3284.57, plus interest at six per cent per annum from September 5 to December 13, 1950, in the sum of $53.64, a total of $3338.21. In the meantime, and following the sale on September 5, plaintiff's lessee had continued to pay his rent to Capitol in the following sums and amounts: September 13, $40.00; September 29, $37.30; November 6, $40.00; December 4, $40.00, a total of $157.30, as shown by Capitol's ledger sheet. This amount, plus the $67.52 held in the reserve account for taxes and insurance, does not appear from the record to have been credited to anyone. Certainly it was not deducted from the amount of the balance claimed due on the note when the certificate of purchase was assigned on December 13, nor is there any evidence in the record to indicate that it was returned to plaintiff, and there is nothing in the briefs asserting that it was. From all present appearances, this money was retained by Capitol and not accounted for to anyone.

The judgment is affirmed.

MR. JUSTICE HOLLAND not participating.