# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JERRY R. ROSS and JUDITH ROSS, husband and wife,<br><br>         Respondents,<br><br>    v.<br><br>ARCPE 1, LLC, a Florida limited liability company,<br><br>         Appellants. | No.  59449-8-II<br><br><br><br>PUBLISHED OPINION |

PRICE, J. — In 2007, Jerry and Judith Ross borrowed $350,000 under a line of credit.  The line of credit documents included a promissory note and a deed of trust that encumbered the Rosses' property.  Unfortunately, the documents included different maturity dates for the obligation—the maturity date included in the promissory note was January 31, 2017, and the date included in the deed of trust was February 28, 2017, 28 days later.

The Rosses defaulted, failing to pay the balance of the line of credit by either maturity date.  Years later in February 2023, the lender, ARCPE 1 LLC, initiated nonjudicial foreclosure proceedings against the Rosses.[1]  The initiation of the foreclosure was timely under the applicable statute of limitations if the February 28 maturity date included in the deed of trust applied, but untimely if the January 31 maturity date in the promissory note applied.

---

[1] The promissory note and deed of trust were initially issued by Morgan Stanley Credit Corporation, but Morgan Stanley eventually assigned its interests to ARCPE.

The Rosses responded with a lawsuit, alleging that the foreclosure was untimely. Both parties moved for summary judgment. The superior court granted the Rosses' motion for summary judgment and awarded the Rosses attorney fees.

ARCPE appeals, contending that the statute of limitations had not expired because the February 28 maturity date from the deed of trust controlled. ARCPE also argues that the superior court erred in granting attorney fees to the Rosses. Both ARCPE and the Rosses request attorney fees on appeal.

We affirm the superior court, deny ARCPE's request for attorney fees, and grant the Rosses' request for attorney fees on appeal.

FACTS

I. BACKGROUND

In 2007, the Rosses obtained a $350,000 line of credit that was documented by a promissory note and secured by a deed of trust. The Rosses executed the promissory note on February 1 and the deed of trust on the following day, February 2.

A. THE DOCUMENTS

1. The Promissory Note

Although the promissory note did not explicitly use the words "maturity date," that date is found by reading two aspects of the note together—the provision tying the payoff date to 10 years from the "date of this Agreement" and the provisions that set forth that date. Clerk's Papers (CP) at 193. The note provided that

> [y]our account and credit privileges will terminate 10 years from *the date of this Agreement* (the "Termination Date") . . . . On the Termination Date, you agree to and will pay . . . the entire outstanding balance on your Account . . . .

CP at 193 (emphasis added).  The "date of this Agreement" is, in turn, found in two separate places

of the note, both at the beginning and at the end.  CP at 193.  The top of the note stated, "THIS

Agreement is made January 31, 2007."  CP at 193.  Separately, on the final page (the "Allonge to

Note" where the lender signed), it said "Note Date:  01/31/2007."  CP at 198.  Ten years from "the

date of this Agreement," then, placed the promissory note's maturity date at January 31, 2017.  CP

at 193.

The promissory note also included several other provisions relevant to the parties' dispute.

The note, for example, directed the borrower to refer to the deed of trust should they want more

information about the lender's security interest for the loan.

> 3.  Security Interest.  To secure payment of your Account you will be signing a
> Deed of Trust which gives us a lien on the real property (the "Property") indicated
> at the end of this Agreement.  You should refer to the Deed of Trust for *additional*
> *information* concerning our security interest and our rights with respect to the
> Property upon default. . . .

CP at 193 (emphasis added).

In a paragraph labeled "Changes of Terms," the promissory note also provided that the

lender "may change the terms of this Agreement . . . if [the borrower] agree[s] to the change in

writing at that time . . . ."  CP at 194.

Finally, just above the Rosses' signature lines, the note recited that the Rosses received a

copy of all of the documents, including the deed of trust and "agree to be bound by the terms of

all of the credit documents."  CP at 197 (capitalization omitted).

2.  The Deed of Trust

Critically, the deed of trust provided a different maturity date than the promissory note for the debt; the deed of trust stated that the payoff of the loan was due on February 28, 2017, rather than January 31, 2017.

> AMOUNT SECURED: Three Hundred, Fifty Thousand and 00/100 Dollars ($350,000.00) the outstanding balance of which, if not paid sooner, *is due and payable on February 28, 2017*.

CP at 201 (emphasis added).

Another provision of the deed of trust, arguably relevant to the parties' dispute, referenced the note for the terms of repayment. This same provision suggested that the note and the deed of trust were expected to be executed simultaneously on the "same day." CP at 202. The provision stated that the deed of trust was intended

> TO SECURE to Lender (a) the repayment of all indebtedness due and to become due *under the terms and conditions* of the [Note] *executed by Borrower* and dated *the same day* as this Deed of Trust . . . .

CP at 202 (emphasis added).

In addition, the deed of trust contained an attorney fees provision that required the borrower to pay the lender's fees for enforcing the loan obligations; it stated,

> Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies . . . including, but not limited to, reasonable attorney's fees.

CP at 205.

B. THE ROSSES FAIL TO PAY ON THE OBLIGATION; WARNINGS ARE SENT

Despite having promptly withdrawn the full $350,000 of the line of credit in 2007, the Rosses failed to make any payments after 2009. ARCPE apparently took no immediate action. But as early 2017 approached (when the loan would become due under either of the competing maturity dates), the loan servicer for ARCPE began to send warning notices to the Rosses, including 180-day, 60-day, 30-day, and a final notice.

The warning notices included dates that were inconsistent with the dates found in both the promissory note and the deed of trust. The notices stated that the promissory note, "dated 02/06/2007," was reaching its maturity date and the outstanding balance of the loan had to be paid by "03/04/2017."[2] CP at 211-17. Moreover, in both January and February 2017, the loan servicer sent monthly billing statements that represented that payments were due on the fourth of the following month.

Notwithstanding these warning notices, the Rosses failed to make any further payment. Again, ARCPE apparently took no action.

II. PROCEEDINGS BELOW

Finally, about six years later, ARCPE initiated a nonjudicial foreclosure by sending the Rosses a notice of default on February 8, 2023. The Rosses responded with a lawsuit, seeking a declaration that the promissory note and deed of trust were unenforceable because of the six-year

---

[2] ARCPE suggests that this payoff date is consistent with the deed of trust's maturity date of February 28 because the "consistent actions" of the parties made the fourth day of each month the due date for monthly payments. Appellant's Opening Br. at 37. Notwithstanding this suggestion, neither party explains why these warning notices stated that the promissory note was dated February 6, 2007.

statute of limitations. The Rosses contended that because the promissory note provided that the full balance was due on January 31, 2017, the statute of limitations ran on January 31, 2023 (six years later), making ARCPE's foreclosure notice eight days too late. The Rosses also sought an award of attorney fees.

ARCPE disagreed, arguing that the February 28 date in the deed of trust, not the January 31 date in the promissory note, was controlling. Thus, ARCPE argued the statute of limitations would have expired on February 28, 2023, making its February 8 notice of default timely (with twenty days to spare).

Both parties moved for summary judgment. After a hearing, the superior court agreed with the Rosses that the statute of limitations expired on January 31, 2023, making ARCPE's foreclosure proceedings untimely. The superior court's order on summary judgment also awarded the Rosses reasonable attorney fees "in an amount to be determined at a subsequent hearing." CP at 385.

Over two months later, based on the superior court's summary judgment order, the Rosses requested a specific amount of attorney fees. ARCPE objected, arguing that the Rosses' request was untimely under CR 54(d), which imposes a 10-day deadline for a party to request attorney fees after judgment. The superior court granted the Rosses' motion and awarded them attorney fees and costs in the amount of $21,092.50.

ANALYSIS

ARCPE contends the superior court erred by (1) using the incorrect maturity date from the promissory note, instead of the date from the deed of trust, when it applied the six-year statute of limitations, and (2) awarding the Rosses attorney fees when their request was untimely under CR 54(d).

I. THE STATUTE OF LIMITATIONS

A. LEGAL PRINCIPLES

We review the superior court's summary judgment order de novo. *Blue Ribbon Farms Prop. Owners' Ass'n v. Mason*, 31 Wn. App. 2d 1, 14, 547 P.3d 927 (2024). We engage in the same inquiry as the superior court. *Id.* at 15. Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021).

1. Principles of Contract Interpretation

We rely on general contract law principles to interpret provisions in promissory notes and deeds of trust. *See U.S. Bank Nat'l Ass'n v. Roosild*, 17 Wn. App. 2d 589, 598, 487 P.3d 212, *review denied*, 198 Wn.2d 1026 (2021). The purpose of contract interpretation is to ascertain the intent of the parties. *Silvey v. Numerica Credit Union*, 23 Wn. App. 2d 535, 545, 519 P.3d 920 (2022).

Washington follows the "objective manifestation theory" of contract interpretation. *Id.* Under this approach, courts focus on the objective manifestations to ascertain the parties' intent. *Id.* " 'We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement demonstrates a contrary intent.' " *Id.* (quoting *Hearst Commc'ns, Inc. v.*

*Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005)). We also view the contract as a whole, interpreting particular language in the context of other contract provisions. *Id.* Our primary goal is to determine the parties' intent at the time they executed the contract rather than the interpretations the parties are advocating at the time of the litigation. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013).

Ordinarily, when two contracts covering the same subject conflict, the subsequently negotiated contract controls. *See Graoch Assocs. # 5 Ltd. P'ship v. Titan Const. Corp.*, 126 Wn. App. 856, 867, 109 P.3d 830 (2005); *Durand v. HIMC Corp.*, 151 Wn. App. 818, 830, 214 P.3d 189 (2009), *review denied*, 168 Wn.2d 1020 (2010) ("When a second contract between the same parties deals with the same subject matter as the first, but it does not state whether it is intended to discharge or replace the first, the contracts must be interpreted together and the second agreement prevails if there are any inconsistencies.").

We generally construe ambiguities against the contract's drafter. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995). The *Restatement of Contracts* further explains the rule's rationale:

> Where one party chooses the terms of a contract, [they] [are] likely to provide more carefully for the protection of [their] own interests than for those of the other party. [They] [are] also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, [they] may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, . . . there is substantial reason for preferring the meaning of the other party.

RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (AM. L. INST. 1979).

8

2. Statute of Limitations for Promissory Notes

A promissory note is a promise to repay a debt. *Merritt v. USAA Fed. Sav. Bank*, 1 Wn.3d 692, 699, 532 P.3d 1024 (2023). A deed of trust can be used to secure the obligation of a promissory note. *In re Tr.'s Sale of Real Prop. of Burns*, 167 Wn. App. 265, 272, 272 P.3d 908, *review denied*, 175 Wn.2d 1008 (2012). To create a deed of trust mortgage, the borrower generally executes a promissory note in favor of the creditor. *Merritt*, 1 Wn.3d at 699. Then, as security for the debt, the borrower-grantor conveys title to real property by a deed of trust to a trustee who holds it in trust for the creditor-beneficiary. *Id.* The deed of trust creates a lien on the property, such that if the borrower defaults on the note, the creditor has the right to foreclose on the property. *Id.* at 700.

But the terms of the promissory note, not the deed of trust, create the obligation to repay the debt. *See Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 104, 285 P.3d 34 (2012) (beneficiary of a deed of trust is the holder of the instrument or document evidencing the obligation secured by the deed of trust—the promissory note); *see also* 59 C.J.S. *Mortgages* § 16 (2019) ("[A] borrower's obligation to pay his or her lender arises from the note, and not the deed of trust; rather, the deed of trust merely secures the indebtedness evidenced by the note."). The deed of trust " 'follows the note by operation of law.' " *Merritt*, 1 Wn.3d at 700 (quoting *Winters v. Quality Loan Serv. Corp. of Wash., Inc.*, 11 Wn. App. 2d 628, 643-44, 454 P.3d 896 (2019)). As a result, "if a promissory note is unenforceable, the deed of trust securing that note is also unenforceable." *Id.*

Legal actions related to promissory notes and deeds of trust, as written contracts, are subject to a six-year statute of limitations. RCW 4.16.040 ("The following actions shall be commenced within six years: (1) An action upon a contract in writing, or liability express or

implied arising out of a written agreement . . . ."); *Merritt*, 1 Wn.3d at 700.  Because enforceability

of the deed of trust is dependent on the enforceability of the promissory note, "the six year statute

of limitations on a deed of trust 'begins to run when the party is entitled to enforce the obligations

of the note.' "  *Id.* (quoting *Wash. Fed., Nat'l Ass'n v. Azure Chelan LLC*, 195 Wn. App. 644, 663,

382 P.3d 20 (2016)).

B.  PROMISSORY NOTE CONTROLS

ARCPE argues that its February 8, 2023, notice of foreclosure was not untimely because it

was within six years of when the debt matured.  For this maturity date, ARCPE contends that the

deed of trust's terms control.  ARCPE supports this position, in part, because the deed of trust

included a clear maturity date of February 28, 2017, and by contrast, the promissory note included

no specific termination date at all.  ARCPE contends the note did not "facially indicate

whatsoever" that January 31, 2017, was intended to be the maturity date.  Appellant's Opening Br.

at 28.

The Rosses respond that the promissory note's date of January 31, 2017, controls because

the note's terms were actually clear and unambiguous.  They explain the note explicitly stated that

full payment was due "ten years after the 'date of this Agreement' " and the "date of this

agreement" was clearly listed as January 31, 2007.  Br. of Resp't at 10.  Thus, the statute of

limitations to enforce the promissory note and deed of trust expired on January 31, 2023, meaning

that ARCPE missed the statute of limitations by eight days.

As explained above, the enforceability of the deed of trust depends on the enforceability of

the note and, therefore, the statute of limitations begins to run from the date the promissory note

is enforceable.  *Merritt*, 1 Wn.3d at 700.  Contrary to ARCPE's assertion, the promissory note

contains a maturity date—January 31, 2017. While it is true that the note uses the term "termination date" and the term "maturity date" is not actually used, the note clearly includes a maturity date. CP at 193. The note states that full payment was due 10 years "from the date of this Agreement" and the agreement was "made" on January 31. CP at 193. We are not persuaded that these different labels create any ambiguity; the promissory note plainly imposes a maturity date of January 31, 2017, for the debt. *See* 10 C.J.S. *Bills and Notes* § 118 (2019) ("Where a . . . note is in terms payable . . . in a specific number of . . . years after a certain date, it becomes due on that day . . . ."), § 119 ("Where [an instrument] is payable a specified number of . . . years after date, it matures . . . on the last day of the time specified . . . .").

Although neither party cites Washington authority that speaks directly on how to resolve the conflict between the maturity date identified in the promissory note and the deed of trust, running the statute of limitations from the maturity date of the promissory note is consistent with Washington law dictating that the enforceability of the promissory note controls the statute of limitations. *See Merritt*, 1 Wn.3d at 700.

Further, other courts have consistently held that the promissory note controls over the deed of trust. In fact, it has been characterized as the "universal rule" that when a promissory note and a deed of trust have conflicting terms about the debt, the date in the promissory note will govern. *See Landy v. Jordan*, 266 P.2d 1115, 1118 (Colo. 1954). This rule has been followed by multiple jurisdictions, each concluding that the terms of the note control the maturity date of a debt when there is a conflict with security instruments. *See Brown v. First Nat. Bank of Montgomery*, 75 So. 2d 141, 143 (Ala. 1954) ("[W]hen the note and mortgage contain conflicting and irreconcilable provisions as to the character or terms of the debt, or the time for its payment, the note will govern

. . . ."); *Landy*, 266 P.2d at 1118; *First Interstate Bank of Fargo, N.A. v. Rebarchek*, 511 N.W.2d 235, 241 (N.D. 1994) ("[W]hen there is an irreconcilable conflict between the terms of the note and mortgage as to maturity, the terms of the note must prevail . . . ."); *WVMF Funding v. Palmero*, 320 So. 3d 689, 694 (Fla. 2021) ("Our foreclosure precedent is clear that the mortgage must be read together with the note it secures and that, if the terms of the two documents conflict, the note prevails.").

The rationale behind this rule is that the promissory note represents the obligation and the deed of trust is merely the security for the obligation. *See Brown*, 75 So. 2d at 143 (the terms of note govern because it is "the principal obligation"); *Landy*, 266 P.2d at 1118 (the rule applies because "the note represents the principal obligation, the trust deed merely being incidental thereto and for the purposes of securing payment thereof"); *First Interstate Bank of Fargo, N.A.*, 511 N.W.2d at 241 (the terms of note prevail "because [the] note is the principal obligation and the mortgage only incidental to it").

Washington law shares this rationale. A deed of trust " 'follows the note by operation of law.' " *Merritt*, 1 Wn.3d at 700 (quoting *Winters*, 11 Wn. App. 2d at 643-44). Thus, the promissory note controls the repayment terms of the obligation, notwithstanding different terms in the deed of trust. The note's maturity date of January 31, 2017, applies, not the deed of trust's date of February 28. As a result, the statute of limitations ran on January 31, 2023, eight days before ARCPE's notice of foreclosure.

C.  DEED OF TRUST DOES NOT ALTER THE PROMISSORY NOTE

ARCPE makes several arguments against this straightforward conclusion, primarily based on the assertion that the terms in the deed of trust modified the maturity date in the promissory note.  None of ARCPE's arguments are persuasive.

First, ARCPE contends that the language of the promissory note actually "import[ed]" the maturity date established in the deed of trust.  Appellant's Opening Br. at 33.  ARCPE points to the promissory note's language that the Rosses " 'should refer to the Deed of Trust for additional information concerning our security interest,' " and that the Rosses agree to be " 'bound by the terms of all the credit documents.' "  *Id.* at 34 (emphasis and boldface omitted) (quoting CP at 193, 197).  ARCPE appears to contend that through these provisions, the promissory note deferred to the deed of trust for the debt's maturity date.  We disagree.  This language merely informs the Rosses that the deed of trust would provide more information about the lender's security interest, not that the terms of the promissory note would be modified.  Indeed, agreeing "to be bound by the terms of all the credit documents," adds nothing helpful to the resolution of conflicting maturity dates.  CP at 197.  As discussed above, the terms of a promissory note generally control when payment becomes due and the statute of limitations begins to run.  *See Merritt*, 1 Wn.3d at 700.

Second, ARCPE argues that because the deed of trust was signed a day after the promissory note, the deed of trust should control.  Because the deed of trust was the subsequent agreement and because the documents provided that the lender "may change the terms of this Agreement" if the Rosses agreed in writing, ARCPE contends that the Rosses agreed in the deed of trust to a modification of the maturity date.  CP at 193, 197.  ARCPE makes the related argument that

because the contracts must be construed together, "the later contract clearly and conclusively resolves the inconsistency." Appellant's Opening Br. at 37.

If the two documents were intended to be sequential, perhaps ARCPE's argument would have merit. But there is nothing to indicate that the one-day delay in the execution of the deed of trust was intended to modify the note. In fact, the language of the documents shows that the parties intended they all be executed simultaneously. A provision in the deed of trust stated that it was intended

> TO SECURE to Lender (a) the repayment of all indebtedness due and to become due under the terms and conditions of the [Note] *executed* by Borrower and dated *the same day* as this Deed of Trust.

CP at 202 (emphasis added). Given this language, the one-day delay appears to be a product of happenstance, not a reflection of the parties' intent to modify the terms of the promissory note.

Third, ARCPE argues that extrinsic evidence such as the Rosses' billing statements and the loan servicer's 180-day, 60-day, 30-day, and "final" warning notices show that the parties intended the loan to mature no earlier than February 28. Each of these statements represented that the outstanding balance was due on March 4, 2017, long after January 31. In addition, a January billing statement was sent that represented that payment was due on February 4, 2017, five days after January 31, further showing, according to ARCPE, that the parties intended for the maturity date to be February 28. But these warning notices and billing statements—issued by ARCPE's loan servicer—do not help ARCPE. None of them state that the note matured on February 28, 2017, nor did they contain language that suggested they were a modification of the note or that the Rosses were agreeing to such a modification. (In fact, the accuracy of the warning notices might reasonably be questioned because they also included an unexplained representation that the

14

promissory note was "dated 02/06/2007.") We are not persuaded that either the warning notices or the billing statements provide any basis to depart from the maturity date of January 31 included in the note.

Finally, ARCPE argues that it should benefit from the legal principle that ambiguities in a contract are construed against the drafter. ARCPE contends that applying this principle here means that "the outstanding balance [would] be due and payable on February 28, 2017[,] as the later date provides a substantial benefit to [the Rosses] in the form of additional time to repay the Loan." Appellant's Opening Br. at 32-33. Stated another way, ARCPE argues that because, in general, a later payoff date favors the debtor, the deed of trust's more generous maturity date should control.

This argument, while creative, runs counter to the rule's rationale. Again, the purpose of construing written contracts against the drafter is that the party who authored the document is

> more likely than the other party to have reason to know of uncertainties of meaning. Indeed, [they] may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, . . . there is substantial reason for preferring the meaning of the other party.

Restatement (Second) of Contracts § 206. Here, it is a reasonable assumption (if not a certainty) that ARCPE's predecessor-lender is solely responsible for the inconsistency of the documents—the lender likely drafted the note with the January 31 maturity date *as well as* the deed of trust with the February 28 maturity date. Given that this inconsistency was very likely created entirely by ARCPE's predecessor, allowing it to reap the benefit of that inconsistency through the use of this legal principle turns the rule's rationale on its head.

In conclusion, because the promissory note matured on January 31, 2017, the statute of limitations expired six years later on January 31, 2023. By serving its notice of default on February

8, 2023, ARCPE attempted to initiate nonjudicial foreclosure proceedings against the Rosses eight days too late. Thus, we hold that the superior court did not err in granting the Rosses' motion for summary judgment.

II. THE SUPERIOR COURT'S AWARD OF ATTORNEY FEES

ARCPE next argues that the superior court erred when it awarded attorney fees to the Rosses. ARCPE contends that the Rosses' motion for attorney fees was untimely in violation of CR 54(d) because it was not brought within 10 days of the summary judgment order. The Rosses respond that because the superior court's summary judgment order awarded fees (just not the specific amount), the 10-day deadline of CR 54(d) was not implicated. We agree with the Rosses.

CR 54(d)(2) provides that a motion for attorney fees must be filed within 10 days after entry of judgment unless otherwise provided by statute or order of the court. The rule states:

> (2) *Attorneys' Fees and Expenses*. Claims for attorneys' fees and expenses, other than costs and disbursements, shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial. Unless otherwise provided by statute or order of the court, the motion must be filed no later than 10 days after entry of judgment.

CR 54(d)(2).

A "[c]laim[]" for attorney fees with the meaning of CR 54(d)(2) is a request for a ruling on that party's entitlement to an award of fees, not a request for the specific amount. *N. Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 569-70, 373 P.3d 296 (2016). In *North Coast*, a party moved for summary judgment with a motion that asserted a general entitlement to attorney fees. *Id.* at 569-70. The superior court granted the motion. *Id.* at 570. Several months later, the party requested a specific amount of fees with a declaration and documents supporting its calculation.

16

*Id.* When the opposing party objected on the grounds that the request violated the 10-day rule of CR 54(d)(2), the superior court agreed that the request was not timely and denied it. *Id.* at 571. We reversed, concluding that "[n]othing in the text of CR 54 suggests that the substance of [the attorney fees] motion, or the manner in which it was submitted, is incongruent with the requirements set forth in CR 54(d)(2)." *Id.* at 573.

This case is analogous to *North Coast*. Here, the superior court awarded attorney fees to the Rosses in its order on summary judgment "in an amount to be determined at a subsequent hearing." CP at 385. CR 54(d)(2) was not implicated when the Rosses' subsequent motion was merely for the specific amount of these fees, the entitlement to which had already been determined.

III. ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. RAP 18.1 allows us to award attorney fees if applicable law entitles a party to an award of attorney fees. "We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.'" *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020) (quoting *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 506, 761 P.2d 77 (1988)).

Both parties appear to agree that the terms of the loan documents provide a basis for an award of attorney fees.[3] Because the Rosses have prevailed, we grant their request for attorney fees on appeal and deny ARCPE's request.

---

[3] Although the loan documents provide attorney fees only to a prevailing lender, Washington law makes any unilateral attorney fees provision bilateral. *See* RCW 4.84.330 (When a contract provides that attorney fees incurred to enforce the provisions of that contract shall be awarded to one of the parties, "the prevailing party . . . shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.").

## CONCLUSION

We affirm and grant the Rosses' request for attorney fees on appeal.

PRICE, J.

We concur:

CRUSER, C.J.

LEE, J.